Leslie W. CARTER, Plaintiff-Appellant,

v.

CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION PLAN, et al., Defendants-Appellees.

No. 79–1693.

United States Court of Appeals, Tenth Circuit.

Submitted Jan. 26, 1981.

Decided Aug. 3, 1981.

Robert B. Thomson of Linde, Thomson, Fairchild, Langworthy & Kohn, Kansas City, Mo., for plaintiff-appellant.

James G. Walsh, Jr. and Steven A. Fehr of Jolley, Moran, Walsh, Hager & Gordon, Kansas City, Mo.; Alan M. Levy and Peter D. Goldberg of Goldberg, Previant & Uelmen s. c., Milwaukee, Wis.; and Robert L. Uhlig of Blake, Uhlig & Funk, Kansas City, Kan., for defendants-appellees.

Before McWILLIAMS, BREITENSTEIN and McKAY, Circuit Judges.

McKAY, Circuit Judge.

Plaintiff brought this action alleging that defendant-pension fund wrongfully denied his application for retirement benefits. Defendant denied plaintiff's application on the grounds that plaintiff lacked employee status in the industry for a number of years. Plaintiff challenges the denial under § 502 of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132. Plaintiff also alleges that defendants breached a fiduciary duty in failing to grant his application and that such breach caused him pain, suffering, and emotional distress. The district court granted defendants' motion for summary judgment.

Plaintiff has been a truck driver since 1931 and has now retired. In order to be entitled to the retirement benefits he seeks, the parties agree that plaintiff must show 20 years of "continuous service" in the in-

dustry.[1] For the relevant 20-year period, defendant granted plaintiff nine years of credit but refused to grant credit for 11 years during which plaintiff worked with Pirkle Refrigerated Lines (Pirkle). Defendant found that plaintiff was not an "employee," within the terms of the Plan, while working at Pirkle.[2] Defendant found that plaintiff was self-employed while working with Pirkle.

This is a challenge under ERISA to a denial of pension fund benefits by a pension fund's trustees. The parties agree that the standard of review to be applied is that the trustees' decision will be overturned by a federal court upon a determination of "whether the Trustees have acted arbitrarily, capriciously, or in bad faith; that is, is the decision of the Trustees supported by substantial evidence or have they made an erroneous decision on a question of law." *Danti v. Lewis*, 312 F.2d 345, 348 (D.C.Cir. 1962). *See Wardle v. Central States Pension Fund*, 627 F.2d 820, 823–24 (7th Cir. 1980), *cert. denied*, —— U.S. ——, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981); *Bayles v. Central States Pension Fund*, 602 F.2d 97, 99–100 & n.3 (5th Cir. 1979); *Bueneman v. Central States Pension Fund*, 572 F.2d 1208, 1209 & n.3 (8th Cir. 1978); *Rehmar v. Smith*, 555 F.2d 1362, 1371 (9th Cir. 1976).

A federal court is to focus on the evidence before the trustees at the time of their final decisions and is not to hold a *de novo* factual hearing on the question of the applicant's eligibility.... As a general matter a court should not resolve the eligibility question on the basis of evidence never presented to a pension

fund's trustees but should remand to the trustees for a new determination.

*Wardle v. Central States Pension Fund*, 627 F.2d at 824. In short, the issue presented by this case could normally be handled by the expedient of summary judgment. When the trial court is presented with the evidence that was considered by the trustees, if it is substantial enough to support the trustees' decision, the trustees' motion for summary judgment should be granted. If the evidence does not support the trustees' decision, a remand to them may be proper or, in the extreme case, an order requiring payment of retirement benefits to the applicant-plaintiff may be appropriate. Further, if a plaintiff can present evidence of factors not considered by the trustees which should have been, and which raise a material issue of fact, summary judgment should be foregone in favor of a trial.

The legal standard to be employed by defendants in making its decision on this issue was, pursuant to the terms of the plan, the common law test of the master-servant relationship.[3] Illinois law, which the plan itself indicates should control issues of construction, Article VI, is in harmony with the Restatement (Second) of Agency § 220 (1957):

### Definition of Servant

(1) A servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control.

---

**1.** Article I, § 15 of the Central States Southeast and Southwest Areas Pension Fund Plan (the Plan) states:

Normal Retirement Date for an employee who became a member of the Plan prior to July 1, 1967 shall mean the date the employee attains his fifty-seventh birthday, or *the date the employee completes twenty years of continuous service in the industry*, or the date the employee completes three years of continuous service under a collective bargaining agreement, or the date on which eighty weeks contributions have been paid to the Pension Fund on behalf of the employee by the employer, whichever last occurs. (Emphasis added).

**2.** Article I, § 14(A) of the Plan provides:

Any service in the industry as an employer, as a member of a partnership or self-employed shall not be included as creditable service for purposes of this Pension Plan.

Article I, § 7(d) further provides:

Employee, as used herein, shall include:

. . . .

(d) In all instances, the common law test, or the applicable statutory definition of master-servant relationship shall control.

**3.** See note 2, *supra*.

(2) In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered:

(a) The extent of control which, by the agreement, the master may exercise over the details of the work;

(b) whether or not the one employed is engaged in a distinct occupation or business;

(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(d) the skill required in the particular occupation;

(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f) the length of time for which the person is employed;

(g) the method of payment, whether by the time or by the job;

(h) whether or not the work is a part of the regular business of the employer;

(i) whether or not the parties believe they are creating the relation of master and servant; and

(j) whether the principal is or is not in business.

See *Wardle v. Central States Pension Fund*, 627 F.2d at 824–25; *Associated Independent Owner-Operators, Inc. v. NLRB*, 407 F.2d 1383 (9th Cir. 1969). Also,

there is no shorthand formula or magic phrase that can be applied to find an answer, but all of the incidents of the relationship must be assessed and weighed with no one factor being decisive. What is important is that the total factual context is assessed in light of the pertinent common-law agency principles.

*NLRB v. United Insurance Co.*, 390 U.S. 254, 258, 88 S.Ct. 988, 991, 19 L.Ed.2d 1083 (1968). *See also Dow v. Connell*, 448 F.2d 763, 765 (10th Cir. 1971), *cert. denied*, 405 U.S. 921, 92 S.Ct. 957, 30 L.Ed.2d 792 (1972).

In this context, plaintiff's argument is essentially that he was an employee of Pirkle as a matter of law or that defendants lacked sufficient evidence on which to conclude that he was self-employed and that a trial is necessary to bring out those facts.

The evidence considered by defendants consisted of the Social Security Administration's records of wages paid in plaintiff's behalf as an employee, defendants' records of contributions paid to the fund on plaintiff's behalf, employer Verifications of Employment, and Union Affidavits of Service under a Collective Bargaining Agreement. On the basis of these documents, defendants granted plaintiff credit for the nine years he worked as a salaried employee covered by the terms of a collective bargaining agreement.

Plaintiff's application raised substantial questions in defendants' minds concerning his status with Pirkle. Additionally, Social Security records failed to name Pirkle as an employer who paid wages on plaintiff's behalf. Consequently, defendants mailed questionnaires to plaintiff and Pirkle by means of which plaintiff's employment status could be more fully explored. The evidence before defendants showed that while working with Pirkle, (1) no social security or income tax was withheld by Pirkle on plaintiff's behalf, (2) plaintiff owned his own tractor and trailer, (3) plaintiff was paid a percentage of revenue rather than a salary while non-owner-operator drivers were salaried, (4) plaintiff paid for all maintenance, fuel, repairs, equipment insurance, and license fees, (5) plaintiff paid taxes as a self-employed person, (6) plaintiff's trailer bore a Pirkle emblem, (7) plaintiff was subject to Pirkle's authority with respect to hiring, firing and discipline, (8) plaintiff operated under Pirkle's operating authority, and (9) plaintiff operated under an exclusive lease to Pirkle but could solicit other business and use his equipment for personal reasons with Pirkle's permission.

■ It is our determination that defendants clearly had sufficient information before them to determine whether plaintiff was Pirkle's employee. The issue was, therefore, ripe for summary judgment.

The trial court needed only to examine this evidence and determine whether defendants acted arbitrarily, capriciously, or in bad faith; that is, was defendants' decision supported by substantial evidence or did they make an erroneous decision on a question of law.

Three of the nine factors listed above point towards plaintiff being a Pirkle employee. Admittedly, the plaintiff-Pirkle relationship is neither pure employee-employer nor pure independent contractor. However, even though we might, as an original trier of fact, have decided that plaintiff was Pirkle's employee, our standard of review requires us to be markedly more deferential to defendants' determination. Defendants' conclusion is based on substantial evidence—differences between plaintiff's relationship with Pirkle and with Union employers caused defendants to investigate plaintiff's Pirkle years and that investigation turned up numerous indicia of plaintiff's independent contractor status. Also, under the common law test to be applied pursuant to the fund agreement, defendants' decision was not erroneous as a matter of law.

Without deciding that our decision on plaintiff's claim under ERISA alone precludes his claim for pain and suffering, there exist independent reasons for disposing of the pain and suffering claim via summary judgment. The district court found support for plaintiff's claim for pain and suffering and mental anguish only in the following portion of plaintiff's deposition:

Q Let me ask you one other thing, sir. Have you had any medical problems in the last four or five years?

A No.

Q Have you missed any work because of medical problems?

A No.

Q Have you had any kind of psychiatric or psychological problems?

A Not really.

Q Feeling pretty good now?

A Well, as good as a man my age could, I guess.

Q Have you incurred any kind of medical bills or hospitalization bills for yourself in the last five years, beyond normal checkups and that kind of thing?

A No.

Q Well, now, you said or your lawyer said in the papers filed in court that you had suffered $5,000 in damages for actual pain and suffering.

A Well, do you have to be in the hospital to go through a period of wonder and questioning?

Record, vol. 2, at 53–54. Without more substantial support for the claim, it was properly disposed of on summary judgment.

AFFIRMED.