**William Karl MURN, Plaintiff-Appellant,**

v.

**UNITED MINE WORKERS OF AMERICA 1950 Pension Trust, Paul R. Dean, Kenneth L. Houck & Julius Mullins, Defendants-Appellees.**

No. 81–2291.

United States Court of Appeals, Tenth Circuit.

Oct. 4, 1983.

Fred Spigarelli, Pittsburg, Kan. and Ernest H. Fremont, Jr., William L. Hubbard, Stephen J. Moore of Popham, Conway, Sweeny, Fremont & Bundschu, P.C., Kansas City, Mo., for plaintiff-appellant.

William F. Hanrahan, Acting Gen. Counsel, Jeanne K. Beck, Asst. Gen. Counsel of UMWA Health & Retirement Funds, Washington, D.C., for defendants-appellees.

Before SETH, HOLLOWAY and BREITENSTEIN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

Plaintiff-appellant Murn sued United Mine Workers of America, UMWA, 1950 Pension Trust, seeking benefits under that Trust. His application was denied by the trustees of the Pension Trust on the ground that he was on strike and hence did not satisfy the eligibility requirements. The court granted summary judgment for the defendants and he appeals. We affirm.

The 1950 Pension Trust was the successor to the UMWA Welfare and Retirement Fund of 1950 and was embodied in the terms of the National Bituminous Coal Wage Agreement of 1974. Both the 1950 Fund and its successor were established under § 302(c) of the Labor-Management Relations Act of 1947, 29 U.S.C. § 186(c). The fund was supported by royalties paid by signatory owners on each ton of coal produced. The purpose was to provide pension benefits to employees and former employees who became eligible for benefits. Eligibility for benefits was governed by the trustees pursuant to agreement. As successor to the 1950 Fund, the 1950 Pension Trust is solely responsible for all claims against the 1950 Fund.

Murn filed a first pension application with the 1950 Fund on June 8, 1973. It

showed the applicant to have completed 20 years of classified service but only four years instead of the required five of "signatory service" defined as work for an employer signatory to the pact after May 28, 1946. The trustees rejected his application on the ground that he had not performed the required service.

The order of the trustees came as a result of the Blankenship Settlement Agreement. *Blankenship v. UMWA Welfare and Retirement Fund of 1950*, consolidated Civil Action, Nos. 2186–69 and 2350–69. D.D.C. February 26, 1973. The Blankenship Agreement was reached subsequent to *Blankenship v. Boyle*, D.D.C., 1971, 329 F.Supp. 1089, between beneficiary miners and the Pension Fund Trustees, regarding the administration of the Trust. It provided that to be eligible for pension benefits an applicant had to have completed 20 years classified service in the coal industry, including five years after May 28, 1946, with exceptions not applicable.

On August 25, 1973, Murn requested reconsideration which was denied. On March 28, 1974, he filed a second application claiming that on January 1, 1950, he had been ordered by union leaders to strike Pioneer Coal Company, and that he had remained on strike until April, 1952. The pension application was denied on the ground that strike time could not be counted in determining eligibility for pension requirements. This action followed. The court granted the defense motion for summary judgment saying, R. 376:

> "[T]he refusal to credit plaintiff Murn's strike time toward his pension eligibility and the consequent denial of plaintiff's pension application is not arbitrary or capricious."

Plaintiff argues that the refusal of the trustees to consider strike time in determining pension eligibility was arbitrary and capricious in violation of 29 U.S.C. § 186(c)(5) which requires that union welfare funds be established as formal trusts to be administered for the "sole and exclusive benefit of the employees . . . ."

In *Mestas v. Huge*, 10 Cir., 1978, 585 F.2d 450, 453, we reviewed the Blankenship Agreement and stated the standard of review of pension fund eligibility determinations thus:

> "Trustees of pension funds have traditionally been accorded wide latitude in adopting eligibility requirements, and such standards are not to be overturned by the courts absent a clear showing of arbitrariness and capriciousness, (Citations omitted.) Where the trustees of a pension fund in setting eligibility standards have several rational alternatives, and select one and reject the others, there is no basis for judicial intervention."

In *Mestas* the question was the requirement of 20 years work.

We do not read *United Mine Workers of America Health & Retirement Funds v. Robinson*, 455 U.S. 562, 102 S.Ct. 1226, 71 L.Ed.2d 419, as dictating a contrary conclusion. There the eligibility requirements had been specifically set by the collective bargaining agreement. The Court distinguished cases such as this in which the trustees had been given authority to decide eligibility requirements. 455 U.S. at 573, 102 S.Ct. at 1233. The Court narrowly held, 455 U.S. at 576, 102 S.Ct. at 1234:

> "[W]hen neither the collective-bargaining process nor its end product violates any command of Congress, a federal court has no authority to modify the substantive terms of a collective-bargaining contract."

The Court held that there was no violation of 29 U.S.C. § 186(c)(5). See also *Hurn v. Retirement Fund Trust, Etc. of So. Calif.*, 9 Cir., 1983, 703 F.2d 386, 388–389.

■ As in *Mestas*, the trustees chose one of several rational alternatives and in so doing rendered judicial intervention improper. The district court noted the decision in *System Council T–4 v. National Labor Relations Board*, 7 Cir., 1971, 446 F.2d 815, 819, cert. denied 404 U.S. 1059, 92 S.Ct. 740, 30 L.Ed.2d 747, wherein the court said that "a company need not compensate a striker—with wages or deferred benefits—for work not performed." Because striking

employees do not produce coal, and thus no royalties are paid to the fund, there is a reasonable relation between the worth of the fund and the production of the employee. See also *Gaydosh v. Lewis,* D.C.Cir., 1968, 410 F.2d 262, 265, and *Roark v. Lewis,* D.C.Cir., 1968, 401 F.2d 425, 428. The trustees' decision not to credit strike time in determining the eligibility for benefits is rationally related to the purposes, structure, and financial soundness of the fund.

■ Murn argues that the trustees have a duty to inform applicants and that their failure to inform him was arbitrary and capricious. The cases cited by Murn are inapt. In *Aitken v. IP & GCU-Employer Retirement Fund,* 9 Cir., 1979, 604 F.2d 1261, the trustees stipulated that they had the required knowledge of the applicant's ineligibility ten years before the application for benefits was received. Here, the trustees had no knowledge until they were presented with Murn's application for benefits. *Lee v. Nesbitt,* 9 Cir., 1971, 453 F.2d 1309, was a situation in which a new rule was applied retroactively to one who had already accumulated the required time. No change in the regulations occurred here. Murn simply failed to meet the requirements established by the Blankenship agreement. The definitions in that agreement provide sufficient notice to union members.

■ An additional argument of plaintiff Murn is that by disregarding strike time in computing pension benefit eligibility, the trustees are penalizing the right to strike. The National Labor Relations Act contains no provision relating to a pension fund trustees' determination of pension eligibility. Not all disadvantages visited upon striking workers are seen to be an infringement on the right to strike. In affirming the Board's ruling on an alleged unfair labor practice, General Electric Co., 80 N.L.R.B. 510, the court said in *System Council T-4 v. National Labor Relations Board,* 7 Cir., 1971, 446 F.2d 815, 819, cert. denied 404 U.S. 1059, 92 S.Ct. 740, 30 L.Ed.2d 747, that "because vacation pay and pensions are a form of deferred benefits, and because an employer is not required to remunerate strikers for work not performed, denial of such benefits does not discriminate against the strikers." Where as here the National Labor Relations Act applies only in the sense of a standard, conduct which would not violate the Act if followed by an employer cannot violate the policy of the Act as declared by Congress.

■ In his complaint, Murn states that the action is brought pursuant to § 502(a) and (f) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132(a) and (f), which allows a participant in a pension plan to bring an action in federal court to recover benefits. 29 U.S.C. § 1144 provides in part:

> "(a) Except as provided in subsection (b) of this section, the provisions of this subchapter ... shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan. . . .
>
> (b)(1) This section shall not apply with respect to any cause of action which arose, or any act or omission which occurred, before January 1, 1975."

"[T]his subchapter" refers to subchapter I, which encompasses §§ 1001 through 1144, including the civil enforcement provisions under which Murn brings this action. *Martin v. Bankers Trust Co.,* 4 Cir., 1977, 565 F.2d 1276, 1279. The language of § 1144 clearly seems to limit § 1132 to causes of action which arise after January 1, 1975. *Paris v. Profit Sharing Plan for Employees of Howard B. Wolf, Inc.,* 5 Cir., 1981, 637 F.2d 357, 359–61; *Cowan v. Keystone Employee Profit Sharing Fund,* 1 Cir., 1978, 586 F.2d 888, 891–93. *Contra Reiherzer v. Shannon,* 7 Cir., 1978, 581 F.2d 1266, 1272.

The trustees of the fund denied Murn's application on July 16, 1973, and on March 26, 1974. Murn did request reconsideration and this was denied on March 18, 1975. The denial of a request for reconsideration does not suffice to invoke jurisdiction. *Riley v. MEBA Pension Trust,* 2 Cir., 1977, 570

F.2d 406, 411. No relief is available under the 1974 Act.

Affirmed.