**George O. NAUGLE,**
**Plaintiff/Appellant,**

v.

**John J. O'CONNELL, Harris Combs and Paul R. Dean, Trustees, United Mine Workers of America Health and Retirement Fund, Defendants/Appellees.**

**No. 85–1750.**

United States Court of Appeals,
Tenth Circuit.

Nov. 18, 1987.

Karen L. Yablonski–Toll, Law Offices of John W. McKendree, Denver, Colo., for plaintiff/appellant.

Richard S. Mandelson, Baker & Hostetler, Denver, Colo. (William F. Hanrahan, Gerald E. Cole, Jr., and Carolyn A. Mensi, Office of Gen. Counsel, UMWA Health & Retirement Funds, Washington, D.C., with him on the brief), for defendants/appellees.

Before HOLLOWAY, Chief Judge, ANDERSON, Circuit Judge, and BRIMMER,* District Judge.

STEPHEN H. ANDERSON, Circuit Judge.

This case comes to us on appeal from district court judgments upholding the denial to plaintiff/appellant George O. Naugle of pension benefits from the United Mine Workers of America 1950 Pension Plan ("the Plan"), and ordering Naugle to restore to the Plan trust $6,902.89 plus interest that the trust had already paid him. For the reasons set forth below we affirm the judgments of the district court.

## I.

To be eligible for Plan pension benefits, the Plan requires an employee to satisfy any one of three different vesting options. First, an employee may qualify by being employed in classified service for twenty years with at least five of those years being signatory service.[1] Second, an employee could qualify with ten years of signatory service so long as at least three of those work years were after December 31, 1970. Finally, if an employee had ten

---

* Hon. Clarence A. Brimmer, Chief Judge, U.S. District Court, District of Wyoming, sitting by designation.

1. Classified service is employment in a bargaining-unit, as opposed to a supervisory, position. Signatory service is a subset of classified service. *See* Article IV ¶ B, R.Vol. I at 210. There is an important distinction between signatory service and employment with a signatory employer. Signatory service is counted for purposes of plan coverage. Employment with a signatory employer is not counted unless it otherwise qualifies.

years of signatory service, but did not have three years of post–1970 signatory service, he still could qualify for pension benefits if he had been in the employ of a signatory employer for those three years, and if he otherwise met the requirements incorporated in the Plan for counting those years as signatory service. This appeal involves the conditions of this final vesting option.

Naugle's employment history shows that for approximately twelve years prior to 1957 he worked in the mining industry in positions that were considered signatory service for purposes of receiving a vested pension benefit under the Plan. In 1957 Naugle accepted a supervisory position from Kaiser Steel that was not a classified position. Naugle held this job until October 9, 1970, when he terminated his employment with Kaiser to become a government mine inspector. However, this employment with the government lasted only three months, after which he resumed his employment with Kaiser on February 1, 1971. Naugle remained in this supervisory employment until he took sick leave and thereafter disability retirement, beginning on April 13, 1975.

On November 27, 1979, Naugle applied for pension benefits from the Plan. The application form used by the Plan only required him to indicate his employment within the coal industry. Accordingly, Naugle did not indicate on the form his interim employment with the federal government. The Plan trustees were nonetheless informed in a letter by Kaiser that Naugle quit Kaiser Steel in October of 1970 and was rehired in February of 1971. However, the trustees apparently overlooked that information and granted him benefits.

Pursuant to an unsuccessful appeal by Naugle for an increased benefit, the trustees noticed that he quit his employment in October of 1970. After a subsequent investigation, they determined that his government employment disqualified him from receiving pension benefits under the third vesting option of the Plan. Accordingly, they informed Naugle that he would receive no further benefits and that they would seek the return of the funds already paid him. He appealed to the trustees and when the appeal was denied sought review in the district court. The district court upheld the trustees' determinations in all particulars and granted them restitution of the funds paid Naugle.

On appeal Naugle contends first that the denial of his pension benefits is erroneous because it violates the provisions of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C.A. §§ 1001 to 1461 (West 1982 & Supp.1987). Moreover, he contends that the denial of benefits to him is inconsistent with the Plan itself. He also argues that summary judgment was improper because there was a remaining question of fact as to whether the denial of his pension benefits was arbitrary and capricious. Finally, Naugle argues that he should not have to return the amount paid by the Plan because the payment was based on a mistake of law, not of fact, and that, accordingly, he need not return the money even if it was mistakenly paid.

## II.

Judicial review of a trustees' decision to deny benefits is limited to a determination of whether the decision is arbitrary or capricious.[2] A decision is neither arbitrary nor capricious if it is based on

**2.** If a plan affords trustees the right to make eligibility determinations it is reviewable by courts under the arbitrary and capricious standard. However, if the eligibility standards are the subject of collective bargaining and the trustees are not given "full authority" to determine eligibility requirements, the court reviews them only to determine whether they comply with federal law. *See United Mine Workers v. Robinson,* 455 U.S. 562, 573–74, 102 S.Ct. 1226, 1233, 71 L.Ed.2d 419 (1982). In the instant case, despite the incorporation of the Plan into

the National Bituminous Coal Wage Agreements of 1974, 1978 and 1981, neither party contends that the Plan's eligibility requirements were a subject of collective bargaining, and both concur that this court may review the trustees determination under an arbitrary and capricious standard. The Plan notes that "The Trustees or such other named fiduciaries as may be properly designated shall have full and final determination as to all issues concerning eligibility for benefits." *See* Article VI ¶ A, R.Vol. I at 212.

substantial evidence and is not the result of a mistake of law. *See Carter v. Central States, Southeast and Southwest Areas Pension Plan,* 656 F.2d 575, 576 (10th Cir. 1981); *Peckham v. Bd. of Trustees of Int'l. Bhd. of Painters,* 653 F.2d 424, 426 (10th Cir.1981). *See also Murn v. United Mine Workers of America 1950 Pension Trust,* 718 F.2d 359, 361 (10th Cir.1983); *Mestas v. Huge,* 585 F.2d 450, 453 (10th Cir.1978). Naugle argues that the denial of a pension benefit to him is erroneous because it is inconsistent with ERISA. We disagree.

In order to protect employees, ERISA mandates certain minimum vesting requirements that all pension plans must meet. Pension plans satisfy ERISA requirements if any one of three statutory options for minimum vesting is met. Two of these options are relevant to this appeal. The first option requires a plan to provide that an employee with "at least 10 years of service ha[ve] a nonforfeitable right to 100 percent of his accrued benefit derived from employer contributions." 29 U.S.C.A. § 1053(a)(2)(A) (West 1987).[3] This is the option that the trustees claim the Plan satisfies. The second option requires a plan to provide that "an employee who has completed at least 5 years of service ha[ve] a nonforfeitable right to a percentage of his accrued benefit derived from employer contributions." 29 U.S.C.A. § 1053(a)(2)(B) (West Supp.1987).[4] Naugle argues that the Plan does not comply with the first option and must be interpreted to come within the provisions of the second, thus granting Naugle a percentage benefit for the more than five years of service that he performed.[5] As evidence that the Plan does not comply with the first option Naugle notes that the Plan pays a full pension benefit for participants with more than 20 years of service but only pays a percentage of the full pension benefit for those participants employed more than ten but less than twenty years. Naugle argues that if the first alternative statutory schedule actually had been adopted, as the trustees claim, "there would be no percentage pension benefit for an applicant with more than ten (10) but less than twenty (20) years of signatory service." Appellant's Brief at 6 n. 7.

■ Naugle apparently misreads the first ERISA alternative. A correct reading shows that it requires only that an employee with "at least 10 years of service ha[ve] a nonforfeitable right to 100 percent of his accrued benefit *derived from employer contributions.*" 29 U.S.C.A. § 1053(a)(2)(A) (West Supp.1987) (emphasis added). It does not require that once an employee obtains ten years of covered service he receive "a full pension benefit." Naugle's reading would require that an employee with ten years of qualified service receive the same pension benefits as all other employees who may have worked years longer. As the district court said in rejecting this argument, "[a]ccrued benefits increase with each year of service as an employer contributes additional money into the employee's pension account." R.Vol. II at 352. And, "[t]his increase ... is not necessarily inconsistent with a participant's right to 100 percent of his or her accrued benefits derived from employer contributions." *Id.* The Plan defines a full pension benefit and requires twenty years of qualified employment to obtain it. However, it provides for a percentage payment of that full pension benefit to all employees having at least ten years of qualified service. Naugle offers no evidence to suggest that this percentage of the full pension benefit

---

3. This section of ERISA allows trustees to disregard all years of service "before January 1, 1971, unless the employee has had at least 3 years of service after December 31, 1970." 29 U.S.C.A. § 1053(b)(1)(E) (West Supp.1987). Thus, the trustees were authorized to disregard the approximately twelve years of credited service which Naugle performed prior to 1957 if Naugle's service after he quit in 1970 was not attributed to him for purposes of pension eligibility.

4. This second alternative further sets out the required minimum percentages of employer contributions to which the employee has vested rights based on the employee's years of service.

5. It nonetheless appears to us that if Naugle's pre–1970 employment is not to be counted for purposes of pension vesting pursuant to section 1053(b)(1)(E), Naugle fails to qualify for any benefit under either alternative.

is not "100 percent of his accrued benefit derived from employer contributions." Accordingly, we reject Naugle's contention that we must construe the Plan under the second alternative minimum vesting option set out in section § 1053(a)(2)(B).[6]

As a second matter, Naugle argues that the Plan is broader than the ERISA regulations, and that the trustees erred in construing the Plan according to strict ERISA provisions. The Plan, however, in determining who is eligible for pension benefits, incorporates the statutory and regulatory provisions of ERISA. Accordingly, to determine who is eligible under the Plan it is necessary to refer to Plan definitions, as well as statutory and regulatory mandates. Thus, it is not always an easy task to determine who is qualified under the Plan. This is one of the reasons why the court defers to the judgment of trustees who have the right to make broad eligibility determinations unless that judgment is arbitrary or capricious. *See Murn*, 718 F.2d at 361; *Elser v. I.A.M. Nat'l. Pension Fund*, 684 F.2d 648, 654 (9th Cir.1982), *cert. denied*, 464 U.S. 813, 104 S.Ct. 67, 78 L.Ed.2d 82 (1983); *Carter v. Central States, Southeast and Southwest Areas Pension Plan*, 656 F.2d 575, 576 (10th Cir. 1981); *Peckham v. Bd. of Trustees*, 653 F.2d 424 (10th Cir.1981); *Ponce v. Constr. Laborers Pension Trust*, 628 F.2d 537, 542 (9th Cir.1980); *Mestas v. Huge*, 585 F.2d 450, 453 (10th Cir.1978); *Roark v. Lewis*, 401 F.2d 425, 429 (D.C.Cir.1968).

The Plan provides that an applicant is eligible for pension benefits if he has:

(1) Attained the age of fifty-five (55) years, and

(2) Either completed twenty (20) years of Credited Service, including the required amount of signatory service as set forth in Article IV(C)(4) or completed at least ten (10) years of signatory service, in-cluding at least three (3) years of signatory service after December 31, 1970. Article II ¶ B of the Plan.

▌ At the time of Naugle's retirement and subsequent pension application he was over fifty-five years of age. But, he had not completed twenty years of classified service nor did he have three years of signatory service after December 31, 1970. Thus, in order to qualify for pension benefits, Naugle had to meet the requirements of Article II ¶ E of the Plan which provides:

> For all purposes of this Article II, if any Participant's signatory service shall be less than the total of his years of employment in the coal industry after May 28, 1946 for Employers then signatory to the bituminous coal wage agreement then in effect ..., and if such Participant has at least three years of such employment after December 31, 1970, then such years of employment shall be used for purposes of any eligibility requirement of minimum signatory service under this Article in place of years of signatory service.... The provisions of this paragraph shall be interpreted and construed in accordance with the requirements of ERISA and the regulations issued thereunder.

Article II ¶ E of the Plan.

Therefore, under the terms of the Plan, even if an employee does not have enough post–1970 years of signatory service to qualify for a pension, so long as he is in the employ of signatory employers and otherwise qualifies under the requirements and regulations of ERISA, those years are counted as signatory service for purposes of qualifying for a vested pension benefit. But, ERISA regulations indicate that not all years of employment for a signatory employer need be counted for purposes of pension eligibility. They do require trustees to take into account all covered (classified) service and contiguous noncovered service with signatory employers.[7] That is,

---

**6.** At any rate, Naugle's suggested second alternative is also irreconcilable with the Plan since the Plan incorporates no provision to pay pension benefits to anyone with less than ten years of qualified service.

**7.** Noncovered service is deemed contiguous if "(1) the noncovered service precedes or follows covered service and (2) no quit, discharge, or retirement occurs between such covered service and noncovered service." 29 C.F.R. § 2530.210(c)(3)(iv)(A) (1986).

the trustees must count towards pension eligibility all years where an employee either worked in a classified position or worked for a signatory employer in a position that followed or preceded classified service. The regulations, however, permit trustees to disregard service years that are not classified and which do not precede or follow classified service years for signatory employers.[8]

Naugle quit Kaiser Steel in October of 1970 and accepted employment with the United States government. It was at this time that his contiguous noncovered service ended. Even though he returned to Kaiser in February of 1971, the noncovered service in which he again became employed was no longer contiguous with his covered service that ended in 1957 because it did not precede or follow covered service; it followed government employment.[9] Since, without this time period, Naugle did not have three qualifying years of post–1970 service, the trustees denied him further benefits and informed him that they would seek repayment of the trust amounts already paid to him.

■ Naugle argues that the trustees erred because the provisions of the Plan are broader than the ERISA regulations that the trustees employed in denying him a pension. He notes that the provisions of Article II ¶ E of the Plan state that nonsignatory service employment with signatory employers *"shall* be used for purposes of any eligibility requirement of minimum signatory service under this Article in place of years of signatory service." He thus ar-

gues that even if his service after 1970 was not contiguous with his signatory service it should nonetheless be considered for purposes of vesting his pension benefit because the language of the Plan requires it. However, the same paragraph of the Plan also specifies that the paragraph shall be interpreted and construed in accordance with the regulations issued under ERISA. In our opinion, it is reasonable to read this passage as indicating that years of nonsignatory employment under the Plan shall be taken into consideration for vesting purposes except to the extent that ERISA and its regulations authorize otherwise. And, even if we thought that another interpretation were equally plausible, we could not conclude that such a determination by the trustees was arbitrary, capricious, based on insubstantial evidence or an error of law. "[W]here the trustees of a pension fund in setting eligibility standards have several rational alternatives, and select one and reject the others, there is no basis for judicial intervention." *Murn,* 718 F.2d at 361 (*quoting Mestas v. Huge,* 585 F.2d 450, 453 (10th Cir.1978)).

■ Naugle next argues that the Plan's provisions allowing the trustees to ignore all years of qualified service before 1971 unless an employee has three years of service thereafter are discriminatory in that "the Plan denies pension benefits to certain employees but would give pension benefits to employees who had worked a substantially lesser period of time."[10] He argues that some rational nexus must exist between this exclusionary provision and the Plan's purpose. But, this exclusionary pro-

---

8. "In addition to service which may be disregarded under the statutory provisions ... a multiple employer plan may disregard noncontiguous noncovered service." 29 C.F.R. § 2530.210(f)(1) (1986).

9. It is not arbitrary for the trustees to determine that to "follow" covered service contiguous service must immediately follow covered service. *See Roark v. Lewis,* 401 F.2d 425, 427 (D.C.Cir. 1968). Naugle argues that since he quit between two periods of noncovered service, his pension eligibility should remain unaffected. His argument is only correct insofar as his pre–1970 employment is concerned. After he quit Kaiser, his post–1970 service was not contiguous with covered service, although his pre-

1970 noncovered service remained contiguous with covered service. For purposes of the Plan, however, the lack of contiguous noncovered service after 1970 is fatal.

10. We reject Naugle's attempt to characterize this provision as a "forfeiture" of pension benefits. Rather, the requirement that certain employees have three years of service after December 31, 1970, was a condition of vesting. If Naugle had been entitled to a vested pension benefit under the terms of the United Mine Workers of America Welfare and Retirement Fund of 1950, which preceded the Plan, the Plan would have honored that entitlement. *See* Article II ¶ A of the Plan, R.Vol. I at 207.

vision as incorporated in the Plan comes directly from ERISA itself. *See* 29 U.S. C.A. § 1053(b)(1)(E) (West Supp.1987). Therefore, the thrust of Naugle's argument is that the Plan trustees cannot comply with their fiduciary duties under the Plan and at the same time invoke this exclusionary provision authorized by ERISA. We reject this argument and note that to the extent that a rational purpose could be required of this ERISA provision one exists. Congress included this section in ERISA to avoid imposing on pension plans the heavy cost of providing for retroactive vesting for employees who had terminated their employment prior to ERISA's passage. H.R.Rep. No. 807, 93rd Cong., 2nd. Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 4670, 4687, 4723. To be sure, this legislative line-drawing works a hardship on Naugle. Like many others, Naugle had the necessary years of service to qualify for a pension under the Plan absent this exclusionary provision of ERISA that the Plan incorporated. Unlike many others, he had terminated his employment in classified service for what turned out to be a short time. Nonetheless, the legislative purpose of protecting pension funds by preventing the retroactive vesting of pension benefits is a rational one. And, where the trustees are adhering to exclusionary provisions authorized by Congress, it is not for this court to call their action arbitrary.

■ Next, Naugle argues that summary judgment was inappropriate because there remains a matter of fact as to whether he was arbitrarily denied pension benefits under the Plan. Naugle claims that he attempted to show such an arbitrary denial, by requesting discovery that might show that others similarly situated under the Plan were granted pension benefits whereas he was denied them. Naugle requested such information in interrogatories to the

trustees; the trustees, however, refused to provide such information because it would have required them to manually examine over 200,000 individual benefit application files. On this basis the federal magistrate refused to compel the discovery.

We review discovery rulings by magistrates and the district court under an abuse of discretion standard. *See Silkwood v. Kerr–McGee Corp.*, 563 F.2d 433, 436 (10th Cir.1977); *Usery v. Local Union 720, Laborers' Int'l. Union Of N. Am.*, 547 F.2d 525, 528 (10th Cir.), *cert. denied*, 431 U.S. 938, 97 S.Ct. 2649, 53 L.Ed.2d 255 (1977); *Newell v. Phillips Petroleum*, 144 F.2d 338, 340 (10th Cir.1944). Naugle offers no argument that the magistrate abused his discretion in refusing to compel discovery. Absent such argument we must assume, as we do, that the discovery ruling was appropriate. It is Naugle's responsibility to discover, in an acceptable manner, facts that he deems relevant to the dispute. He cannot fail to discover such facts and then assert that summary judgment is inappropriate because it is precluded by facts that he failed to discover.

Because we find that summary judgment was appropriate in this instance and because we have determined that the trustees' denial of pension benefits was not arbitrary, capricious or based on a mistake of law, we affirm the district court's determination that Naugle does not qualify for pension benefits under the Plan.

### III.

■ The final argument raised by Naugle, and the only one he offers to dispute the trustees' right to restitution, is that erroneous payments based on a mistake of law need not be restored to the mistaken payor. *See* Restatement of Restitution § 45 (1937).[11] We, however, determine

11. *But see, e.g., Morgan Guar. Trust Co. v. American Savings and Loan*, 804 F.2d 1487, 1493 (9th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 3214, 96 L.Ed.2d 701 (1987) (New York law allows restitution for mistake of law or fact); *Glover v. Metro. Life Ins. Co.*, 664 F.2d 1101, 1103 (8th Cir.1981) (Missouri law allows restitution for mistake of law or fact). ERISA allows employers who have made a payment to a mul-

tiemployer plan under either a mistake of fact or a law to recover the mistaken payment within six months "after the plan administrator determines that the contribution was made by such a mistake." 29 U.S.C.A. § 1103(c)(2)(A)(ii) (1982). *See also, Peckham v. Bd. of Trustees of Int'l. Bhd. of Painters*, 719 F.2d 1063 (10th Cir.), *modified and reaff'd*, 724 F.2d 100 (1983). How

that the erroneous payment was based on a mistake of fact, not law, and Naugle concedes that payments based on a mistake of fact are recoverable by the mistaken payor. *See* Brief for Appellant at 19. *See also United States v. Carr*, 132 U.S. 644, 10 S.Ct. 182, 33 L.Ed. 483 (1890); *Sawyer v. Mid–Continent Petroleum Corp.*, 236 F.2d 518, 521 (10th Cir.1956); Restatement of Restitution, § 20 (1937); Restatement (Second) of Trusts § 254 (1959).

Naugle argues that the trustees were informed that he quit Kaiser Steel in October 1970 and that he became re-employed in February of 1971. He asserts that it was the fact that he quit and not that he was otherwise employed which should have made the difference to the trustees in denying him benefits. Therefore, since he was nonetheless granted benefits, Naugle asserts that the payments were the result of a mistake of law. This argument fails. The employment status of a potential beneficiary is, in this case, a matter of fact. That the letter from Kaiser Steel indicating that Naugle quit was overlooked by the trustees in Naugle's initial application does not turn a mistake of fact into a mistake of law. The trustees may have been negligent in failing to request or subsequently determine Naugle's complete employment history before initially granting him benefits, but negligence alone on the part of the payor does not bar the trustee's right to restitution.[12] We have previously noted that "restitution, based on mistake of fact, will not be denied because of forgetfulness of once known facts or negligent failure to ascertain the true facts." *Sawyer*, 236 F.2d at 521.

Because we have determined that the trustees' payment of pension benefits to Naugle was based on their mistake of fact as to his employment status, we determine that they are entitled to restitution of the $6,902.89 which they have already paid to Naugle plus interest on that amount. Accordingly, the district court's judgments are in all respects AFFIRMED.

---

statutory policy might affect different claims for restitution under ERISA is unclear.

**12.** The Restatement of Restitution § 59 comment a (1937) and the Restatement (Second) of Trusts § 254 (1959) suggest that the negligence of the wrongful payor may bar restitution when the payee has relied to his detriment on the

payments. However, Naugle never suggested, either in attempting to defeat the summary judgment in the district court, or on appeal, that he detrimentally relied on the pension payments made to him by the trust. Therefore, the trustees' possible negligence cannot bar restitution.