863 F.Supp. 994 (1994)
Catherine STEINMANN, Plaintiff,
v.
LONG-TERM DISABILITY PLAN OF the MAY DEPARTMENT STORES COMPANY (PN505), Defendant.
No. 4:93cv929JCH.
United States District Court, E.D. Missouri, Eastern Division.
August 1, 1994.
*995 *996 Joseph A. Bartholomew, Cook and Shevlin, Belleville, IL, for Steinmann.
Susan B. Knowles, James J. Virtel, Armstrong and Teasdale, St. Louis, MO, for Long-Term Disability Plan.

MEMORANDUM AND ORDER
HAMILTON, District Judge.
This matter is before the Court pursuant to Defendant's Motion for Summary Judgment.
Plaintiff Catherine Steinmann is a former employee of May Department Stores Company and, at all times relevant to this action, Plaintiff was a member of Defendant Long Term Disability Plan of the May Department Stores Company (the Plan). Plaintiff alleges that she is totally disabled and that she is entitled to benefits under the Plan. Plaintiff brings this action pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 et seq.
Defendant contends that it inadvertently paid to Plaintiff $10,096.17 in Plan assets that she was ineligible to receive. Defendant has filed a counterclaim seeking recovery of that amount.
In the instant motion, Defendant moves for summary judgment on Plaintiff's claim and Defendant's counterclaim. Plaintiff has filed a response to Defendant's Motion.

Summary Judgment Standard
Summary judgment is appropriate when there is no dispute of material fact and *997 the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The moving party always bears the burden of informing the Court of the basis for the motion. Celotex, 477 U.S. at 323, 106 S.Ct. at 2553. However, the party opposing the summary judgment motion may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a material factual dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).
When presented with such a motion, the Court must determine whether any factual issues exist that may reasonably be resolved in favor of either party and therefore must be submitted to the finder of fact. Anderson, 477 U.S. at 250, 106 S.Ct. at 2511. The substantive law determines which facts are relevant and which are immaterial. Only disputes which might affect the outcome will properly preclude summary judgment. Id. at 248, 106 S.Ct. at 2510; Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992). The Court must view the facts in the light most favorable to the nonmoving party, giving such party the benefit of all reasonable inferences to be drawn from the facts. St. Paul Fire & Marine Ins. Co. v. Federal Deposit Ins. Corp., 968 F.2d 695, 699 (8th Cir.1992).

Facts
Viewing the record in the light most favorable to Plaintiff, the Court finds for the purposes of the pending motion that the following facts are established. Plaintiff was employed by May Department Stores Company as Director of Benefits and Human Resources Services. At all times relevant to this action, Plaintiff was a member of the Plan. (Plaintiff's Complaint, ¶ 2; Defendant's Answer, ¶ 2.) Defendant Plan is sponsored by May Department Stores Company for the benefit of its employees. (Defendant's Exhibit 1, Affidavit of Richard A. Brickson, ¶ 3.) The Plan is an employee welfare benefit plan as defined in Section 3(1) of ERISA, 29 U.S.C. § 1002(1). May Department Stores contracted with Metlife to administer the Plan. (Defendant's Exh. D to Brickson Aff.)
In November 1990, Plaintiff began experiencing certain symptoms at work including dizziness, headache, nausea, fatigue and mental confusion. (Defendant's Exh. S to Hartz Aff.) Other employees in the Human Resources department experienced at least some of the same symptoms. (Defendant's Exh. L. to Hartz Aff.) Plaintiff has continued to experience the aforementioned symptoms. (Exh. S.) Plaintiff last worked for May Department Stores Company on August 16, 1991. (Defendant's Exh. A to Hartz Aff.) Plaintiff claims that she cannot work because she is totally disabled.
Plan participants are entitled to benefits when they become totally disabled as a result of accidental bodily injury or sickness and have been so disabled for ninety consecutive days. (Defendant's Exh. A to Brickson Aff., Plan § 3.1.) The term "totally disabled" is defined as follows:
the complete inability of a Member to engage in any and every duty pertaining to any occupation or employment for wage or profit for which the Member is or becomes reasonably qualified by training, education or experience, except that during the Elimination Period plus the first twenty-four months of absence from work due to disability thereafter, the Member shall be deemed Totally Disabled while he is unable to perform the normal duties of his regular occupation and is not engaged in any other occupation or employment, other than Rehabilitative Employment, for wage or profit.
(Id. at ¶ 3.2(a).) The Elimination Period is ninety days of total disability. (Id. at ¶ 3.2(b).)
In late November 1991 or early December 1991, Plaintiff submitted a claim for Plan benefits to Metlife. (James P. Hartz Affidavit, ¶ 4; Defendant's Exh. A to Hartz Aff.) Attached to Plaintiff's claim was an Attending Physician's Statement of Disability prepared by Dr. Alfred Johnson. (Defendant's Exh. A.) Dr. Johnson practices with the *998 Environmental Health Center in Dallas, Texas. (Defendant's Exh. G. to Hartz Aff.)
In his statement, Dr. Johnson indicated that he had treated Plaintiff from August 21, 1991 through October 3, 1991. (Defendant's Exh. A.) Dr. Johnson concluded that Plaintiff suffered from "Toxic Exposure to unknown substance, Chemical Sensitivity, Cephalgia, Dizziness and Lethargy secondary to the toxic exposure." (Id.) Dr. Johnson recommended "avoidance of inciting agents, immunotherapy vaccines." (Id.) Dr. Johnson determined that Plaintiff was totally disabled for her own occupation as of August 26, 1991 for an indefinite period of time. (Id.)
On December 10, 1991, Metlife informed Plaintiff that her claim for disability benefits had been approved. (Defendant's Exh. B to Hartz Aff.) In December 1991, Metlife sent Plaintiff a check for $944.17 for a portion of November and a check for $2,230.00 covering the month of December. (Hartz Aff., ¶ 5.) Metlife voided the $944.17 check and Plaintiff cashed the $2,230.00 check. (Id.) In mid-1992 Metlife issued Plaintiff a check for $7,866.17 (Id. at ¶ 10.) This check was issued in error. (Hartz Aff. ¶ 10.) Metlife intended to void the check but failed to do so. (Defendant's Exh. K to Hartz Aff.)
At the time that Metlife issued the checks, its investigation into Plaintiff's claim was ongoing. By letter dated January 3, 1991, a Metlife representative wrote to Dr. Johnson requesting additional information concerning Plaintiff's condition. (Defendant's Exh. C to Hartz Aff.) Metlife specifically requested "a brief narrative report focusing on the important points of the claimant's medical history, physical findings and test results ..." and "details concerning Ms. Steinmann's current condition, limitations of physical or functional activities, tasks the claimant can or cannot handle as well as when the claimant may be able to again engage in reasonable work." (Id.) Metlife repeated this request in April 1992 and May 1992. (Defendant's Exhs. D, F to Hartz Aff.)
Dr. Johnson responded to Metlife's request by letter dated June 4, 1992. (Defendant's Exh. G to Hartz Aff.) Dr. Johnson summarized Plaintiff's test results as follows:
Mrs. Steinmann had a Volatile Aromatic and Chlorinated Hydrocarbons test that showed elevated levels of Toluene, 1,1,1-Tricholorethane, PCB's, 2-Methylpentane, 3-Methylpentane and Hexane.
She had chemical booth testing that showed positive reactions to ethanol, phenol, chlorine, pesticides and formaldehyde. When the patient did intradermal testing to ethanol and silver she had seizures and when she tested newsprint she had mental confusion, headaches, depression and uncontrolled crying.
(Id.) The Plan also obtained and reviewed a copy of a report prepared by Storms Health and Safety Management, Inc. on December 18, 1990 (the Storms report). (Defendant's Exh. L to Hartz Aff.; Hartz Aff. ¶ 11.) The Storms report evaluated potential causes of employee symptoms at Plaintiff's place of employment. (Defendant's Exh. L to Hartz Aff.) The Storms report summarized various tests conducted at the site and concluded that there was no evidence of carbon monoxide at levels that would cause adverse health effects and that formaldehyde and 4-phenyl-cylohexene were either non-detectable or well below levels which would cause symptoms. (Id.) The Storms report also noted that before changes were made to the ventilation system on November 17-18, 1990 it was possible for the system to occasionally shut down. When the ventilation system shut down for 15-20 minutes there was an increase in carbon dioxide levels. The report concluded that the increased carbon dioxide levels were a possible source of occasional mild headaches. (Id.)
By letter dated July 30, 1992, Metlife informed Plaintiff that her claim for disability benefits was denied. (Defendant's Exh. M to Hartz Aff.) Metlife indicated that its denial was based on a review of Dr. Johnson's medical conclusions and the Storms report. (Id.) In the same letter, Metlife requested that plaintiff return the amounts already paid to Plaintiff under the Plan. (Id.)
Plaintiff timely appealed the decision. (Defendant's Exh. N to Hartz Aff.) Plaintiff submitted additional documentation in support of her claim; including a January 29, 1992 letter from Dr. Johnson, Dr. Johnson's *999 notes concerning Plaintiff's treatment, a letter from Dr. Jeffrey P. Tillinghast stating that Plaintiff's allergy evaluation was unremarkable, treatment notes of Dr. Daniel McNamara Martinez, various letters from Dr. Shelby Kopp the most recent of which indicates that the treatment methods of Dr. Johnson "have not been confirmed to be useful or valid by other scientists in the medical community," medical records from Dr. Donald King, and medical records from Dr. Mark S. Dykewicz including Dr. Dykewicz's statement that he did "not believe that patient's constellation of physical complaints can be explained on the basis of any recognized allergic or immunologic disorder." (Defendant's Exh. S.) Dr. Kopp, Dr. Tillinghast and Dr. Dykewicz all recommended that Plaintiff undergo a neurological examination but there is no indication in the record that Plaintiff did so. (Id.)
On February 16, 1993, Dr. Robert Katz, medical director for Metlife, made the determination that Plaintiff was not totally disabled. Plaintiff submitted a February 9, 1993 letter from Dr. Johnson and also informed Metlife that Plaintiff had received a Social Security disability award. (Defendant's Exhs. V, Y to Hartz Aff.) On April 15, 1993, Metlife informed Plaintiff that its previous denial of Plaintiff's claim had been upheld. (Defendant's Exh. Y.) This action was filed on April 22, 1993.

ANALYSIS

Standard of Review
A denial of benefits is reviewed under a de novo standard "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 956-57, 103 L.Ed.2d 80 (1989). When the fiduciary or administrator is vested with discretionary authority, judicial review is limited to a determination of whether the decision was arbitrary and capricious or an abuse of discretion. Cox v. Mid-America Dairymen, 965 F.2d 569, 571-72 (8th Cir.1992); Oldenburger v. Central States Southeast and Southwest Areas, 934 F.2d 171, 173 (8th Cir. 1991).
Moreover, where a named fiduciary properly delegates its discretionary authority to an ERISA-fiduciary, the decisions of the ERISA-fiduciary are reviewed for an abuse of discretion as well. Rodriguez-Abreu v. Chase Manhattan Bank N.A., 986 F.2d 580, 584 (1st Cir.1993); Madden v. ITT Long Term Disability Plan, 914 F.2d 1279, 1283-84 (9th Cir.1990), cert. denied, 498 U.S. 1087, 111 S.Ct. 964, 112 L.Ed.2d 1051 (1991). ERISA provides for the appointment of an ERISA-fiduciary as follows:
The instrument under which a plan is maintained may expressly provide for procedures ... (B) for named fiduciaries to designate persons other than named fiduciaries to carry out fiduciary responsibilities (other than trustee responsibilities) under the plan.
29 U.S.C. § 1105(c)(1).
The Defendant Plan in the instant case confers upon an Administrative Subcommittee "the general responsibility for the administration of the Plan and the carrying out of its provisions, including, but not by way of limitation, the power to interpret and construct the Plan, to establish rules for the administration of the Plan and the transaction of its business...." (Plan ¶ 8.2.) "The decision or action of the Committee or either Subcommittee in respect to all matters within the scope of its authority shall be conclusive and binding on all persons." (Id.) This language is sufficient to confer discretionary authority upon the committees such that their decisions must be reviewed under an abuse of discretion standard. See Collins v. Central States, Southeast and Southwest Areas Health & Welfare Fund, 18 F.3d 556, 559 (8th Cir.1994) (arbitrary and capricious standard applies where plan provided that trustees had power to construe plan terms, resolve disputes and determine eligibility and that the decisions of the trustees were binding).
The Plan also expressly provides that the May Department Stores Company may enter into an administrative services contract with another company for the provision of *1000 services necessary and desirable in the administration of certain aspects of the Plan, including claims evaluation and provision of full and fair review of claim denials. (Plan, ¶ 8.4.) Pursuant to Section 8.4 of the Plan, the Company entered into an contract for administrative services with Metlife. Because the Company properly delegated its discretionary authority to Metlife, Metlife's decision to deny Plaintiff's claim must be assessed under the same abuse of discretion standard that, in the absence of such delegation, would apply to the decisions of the Administrative Subcommittee. The Court notes that Plan participants were on notice that the decision of Metlife were final. (Defendant's Exh. B to Brickson Aff., Plan Summary, p. 18.)
Under the abuse of discretion standard, the Court must determine whether Metlife's decision to deny Plaintiff's claim was reasonable. Oldenburger, 934 F.2d at 173. The Court may not weigh the evidence. Cox, 965 F.2d at 573. If Metlife's decision is supported by the evidence before Metlife at the time, the Court must affirm the denial of Plaintiff's claim. Lawrence v. Westerhaus, 780 F.2d 1321, 1322-23 (8th Cir.1985).
Upon review of the record, the Court cannot say that Metlife acted arbitrarily or capriciously in denying Plaintiff's claim. Plaintiff relies on the determination of Dr. Alfred Johnson that Plaintiff is totally disabled and the fact that the May Department Stores Company repaired the ventilation system at Plaintiff's place of employment in order to improve air quality. That information was before Metlife at the time it made its decision. Metlife also considered the Storms report and extensive medical records including reports from various attending physicians. The Metlife doctor who conducted that final review of Plaintiff's claim found "no objective evidence for a diagnosis which could form a basis for a functional limitation and disability."
Plaintiff contends that Metlife could only have come to that conclusion if it disregarded Plaintiff's subjective complaints. Plaintiff maintains that if Metlife credited Plaintiff's complaints it would have to conclude that she is unable to work and therefore totally disabled under the terms of the Plan.
It is true that Plaintiff's complaints constitute evidence supporting Dr. Johnson's conclusion that Plaintiff is totally disabled. However, Metlife was entitled to consider all of the evidence before it. It was a proper exercise of Metlife's discretionary authority to disregard the diagnosis of Dr. Johnson, especially in light of Dr. Kopp's statement that Dr. Johnson's methods have not been confirmed by others in the medical community. Donato v. Metropolitan Life Insurance Co., 19 F.3d 375, 380 (7th Cir.1994) (affirming denial of benefits were plan rejected medical diagnosis of clinical ecologists). Metlife reasonably found an absence of objective evidence supporting a diagnosis that would form a basis for a finding of total disability. To deny disability benefits on that ground was a proper exercise of Metlife's discretionary authority. Therefore, the Court will enter summary judgment for Defendant on Plaintiff's complaint.
Defendant Plan counterclaims for a refund of money inadvertently paid to Plaintiff before final denial of her claim. A plan fiduciary may bring an action to recover mistaken overpayments. Luby v. Teamsters Health, Welfare and Pension Trust Funds, 944 F.2d 1176, 1186 (3d Cir.1991); Blue Cross and Blue Shield v. Weitz, 913 F.2d 1544, 1549 (11th Cir.1990); Naugle v. O'Connell, 833 F.2d 1391, 1398 (10th Cir.1987). Such actions are governed by the federal common law of restitution. Luby, 944 F.2d at 1186. Generally, restitution of a mistaken payment is permitted even if the overpayment was caused by the negligence of the party seeking restitution. Id.; Naugle, 833 F.2d at 1398. However, the Plan's negligence may bar restitution when the payee has relied to his detriment on the erroneous payments. Naugle, 833 F.2d at 1398 n. 12.
Defendant has submitted evidence supporting its contention that it erroneously paid Plaintiff $10,096.17 from Plan assets. Plaintiff does not submit countervailing evidence. Nor does Plaintiff allege or attempt to prove that she relied to her detriment on the overpayments. Therefore, the Court will *1001 enter summary judgment for Defendant on Defendant's counterclaim.
In accordance with the foregoing,
IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment (Docket No. 10) is GRANTED.
IT IS FURTHER ORDERED that Defendant shall have judgment against Plaintiff on her complaint and Plaintiff's claims for relief are DISMISSED with prejudice.
IT IS FURTHER ORDERED that Defendant shall have judgment against Plaintiff on Defendant's counterclaim in the amount of $10,096.17 plus post-judgment interest at the rate of 5.49%.