505 So.2d 284 (1987)
U.S.F. & G. COMPANY
v.
David NEWELL.
No. 56829.
Supreme Court of Mississippi.
April 8, 1987.
*285 R.E. Parker, Jr., Gail S. Akin, Varner, Parker & Sessums, Vicksburg, for appellant.
Travis T. Vance, Jr., Vicksburg, for appellee.
Before HAWKINS, P.J., and ROBERTSON and SULLIVAN, JJ.
HAWKINS, Presiding Justice, for the Court:
The circuit court of Warren County awarded David Newell judgment against United States Fidelity & Guaranty Company (USF & G) based upon Newell's auto insurance policy with USF & G and USF & G's mistaken overpayment to Newell. USF & G has appealed. We find that Newell is not entitled to keep USF & G's mistaken overpayment as a matter of law. Accordingly, we reverse in part, affirmed in part, and render.

FACTS
Plaintiff in this case is David G. Newell (Newell), a resident of Vicksburg, and the father of David Thomas Newell (Thomas). On November 18, 1983, Newell assisted Thomas, a minor, in the purchase of a new 1984 Chevrolet automobile from a dealer in Brookhaven. The sales price of the car was $6,640.85, and Newell made a down payment of $850.00, leaving $5,790.85 due on the car. Newell and Thomas executed an installment sale contract to the dealer, which was assigned to the General Motors Acceptance Corporation (GMAC). Newell purchased life and disability insurance for $806.20, paid a title charge of $5.00; and purchased an extended warranty for $330.00, which when added to the unpaid balance, totalled $6,932.05. All this was typed on the contract. In addition, blocked in spaces at the top of the contract showed the finance charge of $2,025.71, the amount financed as $6,932.05, the total payments to be $8,957.76, and the "Total Sale Price" as $9,807.76, including the down payment of $850.00.

 Sale price ....................... $6,445.00
 Sales tax ........................ 193.35
 License & title .................. 7.50
 Total Cash Price ............... $6,645.85
 Financing ...................... 2,025.71
 Insurance ...................... 1,136.20
 Total Time Price ............... $9,807.76
 Cash on Delivery ............... 850.00
 ................................. $8,957.76

Title to the car was made in Newell's and Thomas's names.
Newell owned other motor vehicles and on November 23 the defendant U.S. Fidelity & Guaranty Company (USF & G) issued him a comprehensive liability and collision insurance policy on three vehicles, including the 1984 Chevrolet car. Part D of the policy, "Coverage for Damage to you Auto," states:
LIMIT OF LIABILITY
Our limit of liability for loss will be the lesser of the:
1. Actual cash value of the stolen or damaged property;
2. Amount necessary to repair or replace the property.
The policy also had a $200 deductible provision on any such loss.
On April 17, 1984, the car was in a motor vehicle collision completely demolishing it. The loss was duly reported to and investigated by USF & G.
On May 1 Newell went to the Jackson office of USF & G to settle his claim, and as instructed, took with him the bill of sale and invoice on the car. Jack Brown, a USF & G employee, made the settlement with Newell.
A representative of USF & G told Brown to depreciate the car at a rate of ten cents per mile and Newell and Brown agreed to depreciate the car at this rate. Since the car had been driven approximately 10,000 miles, they agreed to depreciate it $1,000. Brown also subtracted the policy's $200 deductible from a collision loss claim.
*286 Brown looked at the bill of sale Newell brought, and took the "Total Time Price" of $9,807.76 as the value of the car when it was purchased, rather than the "Total Cash Price" of $6,645.85. Accordingly, he deducted $1,200 from $9,807.76 and prepared a USF & G check in the amount of $8,607.76 payable jointly to Newell and GMAC.
That same day Newell took the check to the GMAC office in Jackson, endorsed it, and GMAC issued him a refund check for $2,091.72. Newell returned to Vicksburg later that afternoon and his secretary told him Jack Brown had called and wanted Newell to call him. Also late that afternoon Newell deposited the GMAC check in his bank account in Vicksburg.
Brown testified that another employee of USF & G caught the error he had made. Upon reporting the matter to his supervisor that same afternoon, he promptly telephoned Newell's office in Vicksburg in an attempt to reach Newell. He asked Newell's secretary to have Newell call him in Jackson, told the secretary the mistaken overpayment, and explained that it would be necessary for Newell to return and for them to renegotiate the proper amount due. He further testified that Newell did not call the next day and he again attempted to reach him by telephone without success, and this continued for several days.
Newell testified that he tried to reach Brown by telephone the next morning, but was told by Brown's receptionist that Brown's line was busy. Newell also testified he was unable to talk to Brown for several days, so he consulted and retained an attorney.
Also, on May 1, Brown called GMAC and told them of the mistake which he made and informed them that USF & G had stopped payment on the check. Carolyn Ivy of GMAC reached Newell on the morning of May 2 and informed him that USF & G had stopped payment on its check, and GMAC was stopping payment on its check to Newell. She said Newell did not offer any objection, or sound upset about their doing so.
On May 20 Brown wrote Travis Vance, Newell's attorney, stating:
This letter is to reiterate to you our willingness and desire to settle this claim in the amount of $5,445.85. This amount represents the total cash price less Insured's deductible and depreciation on the vehicle.
This draft can be issued at any time upon your request.
On July 9 GMAC filed a replevin action against Newell to recover possession of the wrecked car, resulting in the car's delivery to GMAC, and eventual payment to GMAC by USF & G of $5,445.85. At the time of payment, the indebtedness of Newell and Thomas to GMAC on the contract exceeded the amount GMAC received from USF & G.
On July 20 Newell filed this action against USF & G in the circuit court of Warren County asking for $9,984.46 actual damages and $1,000,000 punitive damages.
On April 18, 1985, Newell received $866.35 credit from GMAC for the credit life insurance policy and extended warranty purchased for the car.
Trial of this case took three days. When Newell had rested the circuit judge overruled a motion for a directed verdict in favor of USF & G.
At the conclusion of the trial, the circuit judge submitted special interrogatories to the jury:
1. The actual cash value of the plaintiff's automobile immediately prior to the accident of April 17, 1984, which you find by a preponderance of the evidence was $ ____.
If you verdict be for the plaintiff, then also answer the following:
1. Was the $200.00 deductible deducted from your verdict for damages which you returned into Court?
Yes ____
No ____
2. Was the $5,445.85 paid by U.S.F. & G. Company to G.M.A.C. deducted from your verdict for damages which you returned into Court?
Yes ____
No ____

*287 Your answer to this interrogatory should be returned into open Court together with the verdict which you render in this case.
The jury answered the special interrogatories as follows:
Special Interrogatory To The Jury
(1) 6448.03
Was $200 deducted
yes
Was $5445.85 deducted
yes
Plaintiff David Newell
The verdict of the jury was as follows:
We the jury find for the Complainant and assess his actual damages at $6398.00.
Judgment was entered in favor of Newell for $6,398.00, the trial court overruled the motion by USF & G for a JNOV or a new trial, and USF & G has appealed.

LAW
USF & G makes several assignments of error, but we find it necessary to address only the sufficiency of the evidence to support the judgment.
Under the policy USF & G was only liable for the actual cash value of the car when it was destroyed April 17, 1984. It is just as obvious that the check Brown issued Newell and GMAC for $8,607.76 was in excess of the actual cash value of the car. Indeed, it exceeded the $6,645.85 cash sales price of the car when new.
Newell made no complaint at trial as to the method of depreciation or the $200 deductible, totalling $1,200, which would have been deducted from the actual cash value of the car as of April 17, 1984. This leaves $5,445.85 as the actual cash value when settlement was made on May 1.
Newell disputes none of this on appeal. His argument is that USF & G made a mistake which they subsequently mishandled, and therefore a jury issue was made on the damages issue.
A mistake was indeed made, but there is no proof in this record of any monetary damages suffered by Newell as a result of this mistake. It is true he deposited the GMAC check for $2,091.72 to his bank account before being told payment was being stopped. That without more shows no monetary damages. The record also clearly shows that USF & G from May 30, 1984, consistently offered to pay Newell $5,445.85 in settlement of his claim.
This leaves the naked question of whether USF & G, because of this mistake, was nonetheless liable for the full amount of the $8,607.76 check. The answer is no.
In Bessler Movable Stairway Co. v. Bank of Leaksville, 140 Miss. 537, 106 So. 445 (1926), we discussed whether an insured can retain overpayments mistakenly made by the insurer:
Money paid to another by mistake of fact, although such mistake may have been caused by payor's negligence, may be recovered from the person to whom it was paid, in an action for money had and received. (Cites omitted) The ground on which recovery is allowed is that one receiving money paid to him by mistake should not be allowed to enrich himself at the expense of the party who paid the money to him by retaining it, but in equity and good conscience should refund it. In order that this rule may apply, the party to whom the payment mistake was made must be left in the same situation after he refunds it as he would have been left had the payment to him not been made. (Cite omitted) To require him to refund the money would be to throw a loss upon him which he would not have suffered, had it not been for the mistake or negligence of the person who paid the money to him, and to require him to suffer the loss instead of the person through whose negligence or mistake it was caused or would be highly inequitable.
See also 167 A.L.R. 470 (1947). The insurer is entitled to a directed verdict for restitution of money the insurer paid by mistake unless the insured can show that he significantly changed his position relying on the overpayment making it inequitable to require him to return the money. Bank of Belmont v. Judson Lumber Co., 143 Miss. 86, 108 So. 440 (1926). See also *288 Messersmith v. Murray, 667 P.2d 655 (Wyo. 1983); Western Casualty & Surety Co. v. Kohm, 638 S.W.2d 798 (Mo. Ct. App. 1982).
The record shows that USF & G paid GMAC, the lienholder, $5,445.85, which except for the $445.00 noted below, represents the total cash value of the car when it was demolished, and that at the time Newell owed GMAC in excess of this amount on his note.
Newell is entitled to add to the value of his car the $445.00 he spent on undercoating, which we deem an improvement as opposed to maintenance or repair.
It therefore follows that the judgment rendered in the circuit court in favor of Newell in the amount of $6,398.00 should be reversed, and judgment rendered in this Court for Newell in the amount of $445.00.
JUDGMENT OF THE CIRCUIT COURT REVERSED; JUDGMENT ENTERED HERE FOR $445.00.
WALKER, C.J., ROY NOBLE LEE, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
DAN M. LEE, J., concurs in result only.