**NATIONAL BENEFIT ADMINISTRATORS, INC., on Behalf of NATIONAL BUSINESS ASSOCIATION TRUST, Plaintiff,**

v.

**MISSISSIPPI METHODIST HOSPITAL AND REHABILITATION CENTER, INC., Defendant,**

v.

**LAUREL COCA–COLA BOTTLING COMPANY, Samuel Johnson and Derron Johnson, Third–Party Defendants.**

**Civ. A. No. J89–0532(L).**

United States District Court,
S.D. Mississippi,
Jackson Division.

July 26, 1990.

Neville H. Boschert, Watkins Ludlam & Stennis, Jackson, Miss., for plaintiff.

Luther M. Thompson, Otis Johnson Jr., John B. MacNeill, Heidelberg, Woodliff & Franks, Jackson, Miss., David M. Ratcliff, Pack, Ratcliff & Ratcliff, Laurel, Miss., for Laurel Coca–Cola.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This is an action brought by National Benefit Administrators, Inc., on behalf of National Business Association Trust (NBAT), the administrator of an employee health benefits plan, seeking recovery of payments made to defendant, Mississippi Methodist Hospital and Rehabilitation Center (MMHRC), for the account of third-party defendant Derron Johnson. Jurisdiction is based upon both federal question and diversity. Defendant has asserted a counterclaim for the recovery of remaining amounts due on the account. Presently before the court are plaintiff's motion for summary judgment and defendant's motion for partial summary judgment. Each party has responded to the motion of the opposing party, and the court has considered

the memoranda with attachments submitted by the parties in ruling on the motions.

*Parties and Facts*

The facts in this case, for purposes of the present motions, are essentially undisputed. On May 21, 1988, Derron Johnson was injured in an accident. He was hospitalized at the Mississippi Baptist Medical Center (not a party to this suit) for approximately one month. At the time of the accident, Derron Johnson's father, Samuel Johnson, was covered under an employee health benefit plan with his employer, Laurel Coca–Cola Bottling Company. This plan provided that coverage would include dependents of Samuel Johnson who were eighteen years of age or younger, and those dependents over the age of eighteen but less than twenty-five years of age who were full-time students. In July of 1988 Samuel Johnson submitted to plaintiff a claim for Derron's hospitalization expenses at Mississippi Baptist Medical Center. On this form, he stated that Derron's date of birth was June 26, 1969 and that Derron was a student. He made this same representation approximately two weeks later when he signed a new enrollment card for the plan. This date of birth indicated that Derron qualified for health benefits under the terms of the plan. Subsequently, Derron was hospitalized at MMHRC for additional treatment. Before defendant admitted Derron, one of its employees contacted the plan coordinator at Laurel Coca–Cola, who verified that Derron was a qualified dependent. During and after Derron's treatment at MMHRC, several claims were filed with NBAT for his treatment there. Based upon Samuel Johnson's representation on the initial claim form, which indicated that Derron was a qualified dependent, NBAT paid approximately $65,000 in claims to MMHRC, the assignee of benefits due Derron Johnson. Subsequently, plaintiff

learned that Derron's correct date of birth was June 26, 1968 and that he had not been a student at the time of the accident. Thus, he was not a qualified dependent under the terms of the policy. After attempting unsuccessfully to obtain repayment from MMHRC of the amounts paid to Derron's account, plaintiff brought the present action for recovery of the payments. Defendant has asserted a counterclaim for recovery of remaining amounts due on Derron Johnson's account.

In its complaint, NBAT seeks a declaratory judgment that, pursuant to the terms of the plan and under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001 *et seq.* (1985 & Supp.1990), MMHRC is not entitled to retain payments and judgment for the amount of the payments (count I). NBAT also seeks recovery based on the state common law causes of action for money had and received (count II) and conversion (count III). Defendant's counterclaim is for recovery of additional amounts from plaintiff; although the counterclaim does not specify a theory of recovery, defendant's memoranda suggest that this is a state law claim for breach of an implied contract. By its motion, plaintiff seeks summary judgment on counts I and II of its complaint and on defendant's counterclaim. The relief sought by defendant in its motion for partial summary judgment is not entirely clear; when considered along with statements and arguments contained in defendant's memoranda, it appears to be a request for summary judgment on plaintiff's ERISA claim (count I) and the state law conversion claim (count III), and the court will consider it as such.[1]

*Does a Cause of Action Exist under ERISA?*

■ The initial question to be resolved is whether ERISA provides a basis for recov-

---

1. This uncertainty relates to the relief sought with respect to count I, the ERISA claim. In its motion, defendant requests summary judgment "that ERISA is not applicable to MMHRC." In its initial memorandum, defendant appears to view count I as stating, or attempting to state, two alternative theories of recovery—one based on ERISA's express civil enforcement provi-

sions, 29 U.S.C. § 1132, and one based on the "federal common law" of ERISA. Defendant argues that plaintiff may not recover under this former theory, but goes on to state that genuine issues of fact exist with reference to the latter. However, in its rebuttal brief, defendant argues that there is no federal common law right to recovery.

ery. Both parties have moved for summary judgment on this claim. It is helpful, initially, to clarify the manner in which a claim may arise under the Act. Both plaintiff and defendant refer in their briefs to ERISA causes of action which arise under "federal common law," apparently being under the impression that there exist two kinds of ERISA causes of action: those which arise under its express civil enforcement provisions, 29 U.S.C. § 1132, and those which arise under the general federal common law of ERISA. In the court's opinion, this view is incorrect. While Congress did intend that the courts develop federal common law to be applied in ERISA cases when *issues* not specifically addressed in the Act arise, *Degan v. Ford Motor Co.*, 869 F.2d 889, 895 (5th Cir.1989); *Hayden v. Texas–U.S. Chemical Co.*, 681 F.2d 1053, 1058 (5th Cir.1982), Congress did not authorize the courts to develop or allow *causes of action or remedies* not expressly provided for in section 1132, *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54, 107 S.Ct. 1549, 1556, 95 L.Ed.2d 39 ("The six carefully integrated civil enforcement provisions found in [section 1132(a)] ... provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly."). Either plaintiff's ERISA claim arises under the express provisions of the Act, or it does not exist. *Cf. Amos v. Blue Cross–Blue Shield of Alabama*, 868 F.2d 430, 432 (11th Cir.) (indicating that effect of ERISA preemption is to leave remaining only those causes of action expressly provided for in section 1132), *cert. denied,* —— U.S. ——, 110 S.Ct. 158, 107 L.Ed.2d 116 (1989).

The only portion of section 1132 which addresses the type of claim which may be brought by an administrator of a plan is section 1132(a)(3), which provides that a civil action may be brought by a fiduciary to obtain appropriate equitable relief to redress violations of the statute or terms of the plan or to enforce any of their provisions.[2] The question of whether a plan administrator may bring an action under section 1132(a)(3) to recover payments made in error has been addressed in only a few cases. In *Northern California Food Employers & Retail Clerks Unions Benefit Fund v. Dianda's Italian–American Pastry Co.*, 645 F.Supp. 160 (N.D.Cal.1986), a benefit fund sued a beneficiary's employer to recoup benefits improperly paid because of the misreporting by the employer of the beneficiary's work hours. The court held that the action could be maintained under section 1132(a)(3) because it was an action to compensate the plan for money lost due to violations of the terms of the plan. On the other hand, in *NYSA–ILA GAI Fund v. Poggi*, 617 F.Supp. 847 (S.D. N.Y.), *amended and reaff'd,* 624 F.Supp. 443 (1985), a case in which a pension plan sued a beneficiary of the plan whom it claimed had wrongfully accepted benefits, the court dismissed the claim for lack of federal jurisdiction, summarily concluding that nothing in section 1132 grants jurisdiction over an action by a plan to recover benefits wrongfully paid. Finally, in *Provident Life & Accident Insurance Co. v. Waller*, 906 F.2d 985 (4th Cir.1990), the court noted that a plan administrator attempting to sue a plan participant under section 1132(a)(1)(B) to recover advances could probably have brought the claim under section 1132(a)(3). *Id.* at 988 n. 5.[3]

---

**2.** Because plaintiff is the plan administrator, it is a "fiduciary" within the meaning of the Act. *See* 29 U.S.C. § 1002(21)(A).

**3.** The other cases cited by the parties provide little guidance. In *Kentucky Laborers District Council Health and Welfare Fund v. Hope*, 861 F.2d 1003 (6th Cir.1988), the Sixth Circuit, while finding that ERISA provides no express or implied cause of action for a fund to recover benefits paid in violation of the plan, nevertheless reasoned that because the action related to an employee benefit plan, and was therefore preempted, it necessarily must arise under fed-

eral common law. While this court questions the reasoning of that court, notably the court there dealt only with the issue of subject matter jurisdiction, not with whether the plaintiff had a right of recovery under ERISA.

In *Kanawha Valley Power Co. v. Justice*, 383 S.E.2d 313 (W.Va.1989), a case in which an employer sued to recover overpayments from an employee, the court stated only that the claim was controlled by ERISA, specifically noting that the question of whether ERISA provides for recovery had not been raised by the parties.

In *Naugle v. O'Connell*, 833 F.2d 1391 (10th Cir.1987), a suit brought by a beneficiary for

■ Unlike the present case, in none of these cited cases was the court confronted with an attempt to recover from a third-party health care provider. MMHRC's status casts a different light on the question of recovery under ERISA and causes this court to conclude that plaintiff's action cannot be maintained under ERISA. First, defendant is not a party to the plan and, by its mere receipt of mistaken payments, has not violated or threatened to violate its terms. *Cf. Northeast Dep't ILGWU Health and Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund,* 764 F.2d 147, 153 (3d Cir.1985) (where ILGWU fund paid benefits to one who was entitled to benefits under either ILGWU plan or Teamsters plan, and then sued Teamsters plan for declaration of rights, it could not be said that terms of ILGWU plan were being enforced against Teamsters plan, the Teamsters plan not being a party to the ILGWU plan and not having violated or threatened to violate its terms).

Furthermore, a recent Fifth Circuit case suggests that the underlying question raised by plaintiff's suit—which of the parties should bear the risk of loss due to the insured's misrepresentation—is not one for which Congress intended section 1132, or ERISA in general, to provide the answer. In *Memorial Hospital System v. Northbrook Life Insurance Co.,* 904 F.2d 236 (5th Cir.1990), a health care provider, relying on the assurance of coverage by an ERISA plan, and pursuant to an assignment of benefits, admitted and treated a patient whose coverage was not yet effective. After the insurance company refused to pay the claim, the hospital brought a state law claim for negligent misrepresentation[4] against the insurance company which provided coverage for the plan, seeking to recover for its costs of providing medical services to the patient. After determining that the insurance plan was an ERISA plan, the court considered the issue of whether this state law claim was preempted and concluded that it was not. In arriving at this result, the court analyzed the claim in light of "two unifying characteristics" of claims which courts have determined to be preempted: (1) the state law claims addressed areas of exclusive federal concern, such as the right to receive benefits under the ERISA plan, and (2) they "directly affect[ed] the relationship among the traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries." *Id.* at 245. The court determined that the state law claim did not address an area of exclusive federal concern. According to the court, civil recovery by the hospital would not expand the patient's right to receive benefits; the question was simply who should bear the risk of the insured's non-payment. Further characterizing the enforcement of the allocation of risks between commercial entities conducting business in the state as a "classically important

review of the denial of benefits, the Tenth Circuit, after upholding the denial of benefits, held that the plan trustees were entitled to restitution of erroneously paid benefits. The court was not confronted with the question of whether an action could be brought under ERISA for restitution, and the only objection raised by plaintiff was that under the common law, erroneous payments based on a mistake of law, rather than a mistake of fact, need not be restored to the payor. Although it accepted the plaintiff's representation of the law, the court concluded that the mistaken payments were based on a mistake of fact.

The case of *Connors v. Amax Coal Co.,* 858 F.2d 1226 (7th Cir.1988), cited by defendant, likewise is not particularly instructive. There, ERISA plan trustees had paid out to employee coal miners benefits for black lung related medical expenses. They then sued the coal company under the Black Lung Benefits Act for reimbursement. For procedural reasons, the district court did not have jurisdiction based on the Black Lung Benefits Act. That court dismissed for lack of subject matter jurisdiction, rejecting the plaintiffs' argument that such jurisdiction existed pursuant to ERISA. Apparently, plaintiffs' argument was that ERISA determined their status as subrogees of the miners' rights. The Seventh Circuit affirmed, stating that the issue of subrogee status was a subsidiary one raised only in anticipation of possible defenses. Thus, the case does not support the proposition that claims for reimbursement of wrongfully paid benefits may not be brought under ERISA.

4. Although the claim was based upon article 21.21 of the Texas Insurance Code, the court found that this was a codification of the common law doctrine of negligent misrepresentation. *Memorial Hospital,* 904 F.2d at 244.

state interest" rather than an area of exclusive federal concern, *id.* at 246, the court went on to observe that it was not convinced that the hospital's state law claim raised "any issue concerning matters that Congress intended to be regulated exclusively by ERISA," *id.* at 247. Additionally, the court pointed out that the suit did not involve the relations between principal ERISA entities and "would not relate to the terms or conditions of a welfare plan, nor affect—or affect only tangentially—the ongoing administration of the plan." *Id.* at 250.

The court is cognizant that the *Memorial Hospital* case directly addressed only the issue of preemption, not what claims may be brought under ERISA, and involved a claim asserted by the hospital, not against it. Nevertheless, the clear import of the opinion is that in enacting ERISA Congress did not intend to address the question of whether or under what circumstances a health care provider, having extended medical services to a patient and having received payment from the plan, may be made to return those payments to the plan once it is discovered that the patient was not covered. That is, the issue in such a case is simply, as it was in *Memorial Hospital,* who must bear the risk of non-payment. The Fifth Circuit clearly determined that this area of the law has not been displaced by ERISA; it has not been displaced by the exclusive provisions of that statute because ERISA does not regulate it. It follows that if this area is not regulated by ERISA, no cause of action can arise therefrom.

*Plaintiff's State Law Claims*

■ Plaintiff seeks restitution by way of a state law claim for money had and re-ceived. Both NBAT and MMHRC agree on the substance of the principles of the common law regarding restitution of money paid because of a mistake of fact. While the general rule has been stated in various ways, its essence is that a payor who, because of a mistake of fact, erroneously pays money to another may recover those payments from the payee, unless the payee has substantially changed its position in reliance on the payments, such that forcing it to repay the money would be inequitable. *See, e.g., USF & G v. Newell,* 505 So.2d 284 (Miss.1987); 44 Am.Jur.2d *Ins.* § 1780 (1982).

MMHRC argues that it has presented evidence to support a defense based on detrimental reliance. Its position is that NBAT represented to defendant that Derron Johnson was covered under the policy, and defendant substantially changed its position in reliance on that assurance; therefore, plaintiff should now be estopped from asserting non-coverage and recovering the mistaken payments. MMHRC has submitted the affidavit of Jan Floyd, defendant's business office manager, who states that MMHRC relied upon the confirmation of coverage given by Jo Ryles, the plan coordinator at Laurel Coca–Cola, and that, without this verification of coverage, MMHRC would never have admitted Derron as a patient.[5] However, the court concludes that the principles of restitution relied on by the parties do not control the facts of this case.

■ A widely-recognized exception to the general rule stated *supra* is that restitution may not be had in cases in which the mistaken payment is made to an innocent third party creditor, i.e., one who has made no misrepresentations and has no knowl-

---

5. For reasons stated *infra,* it is unnecessary for the court to consider the validity of MMHRC's defense of detrimental reliance. Even so, the court questions whether defendant's evidence supports this defense. Where detrimental reliance has been raised as a defense to a claim for restitution, the defendant has been required to demonstrate that it detrimentally changed its position in reliance upon the receipt of the money. *See, e.g., Restatement of Restitution* § 142 comment b, illustration 7 (1937) (payor not entitled to restitution where payee has used money for luxuries that he would not have purchased but for receipt of the money). The evidence here tends to show only that defendant relied on the representation that Derron Johnson was covered, not on the actual money received from plaintiff. Furthermore, while MMHRC did change its position in reliance on the verification of coverage, i.e., it admitted and treated Derron Johnson, there is no evidence that defendant substantially changed its position in any way after receiving the payments. It merely continued to treat the patient.

edge of the mistake. This exception derives from the fact that the element of unjust enrichment, typically considered a prerequisite for restitution, is absent in such cases. *See Federated Mut. Ins. Co. v. Good Samaritan Hosp.,* 191 Neb. 212, 214 N.W.2d 493 (1974); *Lincoln Nat'l Life Ins. Co. v. Brown Schools, Inc.,* 757 S.W.2d 411 (Tex.App.—Houston (14th Dist.) 1988). No unjust enrichment occurs because the creditor is actually owed the money it receives and has exchanged value for the right to receive the money. In *Lincoln National Life,* an insurer erroneously paid benefits to an assignee after the insured was no longer covered under the policy. The assignee was innocent of any misrepresentations and had no reason to know that the payments were in error. The court's analysis is applicable to the present case:

> [The principles of restitution] make a distinction between mistaken insurance payments made to the insured and those made to an innocent third party creditor of the insured. A critical element mandating restitution in mistake-of-fact payment cases is unjust enrichment.... Here the [hospital] extended medical services and was paid. There was no unjust enrichment. We regard [its] position as analogous to that of a bona fide purchaser. It innocently paid value (medical services) for title to the money it received and is, thereby, under no duty to restore it to the insurer.

*Lincoln Nat'l Life,* 757 S.W.2d at 414. This principle has also been described by Williston as follows:

> When A, under a mistaken belief in his liability to B, on direction of the latter, pays C a claim which C has against B, A cannot recover the payment from C. If the payment was voluntarily and intentionally paid by A to C to satisfy the latter's claim against B, and C had a

genuine claim against B, it seems clear that no recovery should be allowed. C is a purchaser of the money for value and in good faith.

13 § S. Williston, *A Treatise on the Law of Contracts* § 1574. (3d ed.1970).[6]

In Mississippi, as in other jurisdictions, a cause of action for restitution or money had and received is based on the principle that one who has been unjustly enriched at the expense of another should be required to make restitution. *See Fourth Davis Island Land Co. v. Parker,* 469 So.2d 516, 524 (Miss.1985) (citing *Restatement of Restitution* § 1; *Magnolia Fed. Savings and Loan Ass'n v. Craft Realty,* 342 So.2d 1308 (Miss.1977)). In the case *sub judice,* as in *Lincoln National Life,* defendant has not been unjustly enriched. It is undisputed that MMHRC gave value in the form of medical services for the assignment of benefits from Derron Johnson. Restitution is not in order because the element of unjust enrichment is absent.

The undisputed facts also show, for purposes of the present motions, that the Johnsons, not MMHRC, misrepresented the facts to plaintiff, and that defendant neither knew nor had reason to know of the misrepresentation. Plaintiff was in a better position than was defendant to determine whether Derron Johnson was covered under the plan, and consequently, as between the two, it should bear the risk of loss. As the court in *Lincoln National Life* stated,

> [t]his exception to the general rule allowing restitution for money paid under mistake of fact is simply an equitable limitation that places the loss, as between two innocent parties, on the one who has created the situation and was in the best position to have avoided it. [The insurer], possessing the policy and the knowledge of its terms, made the mistake and,

**6.** The *Restatement of Restitution* provides a similar example:

> A creditor of another ... who has received from a third person any benefit in discharge of the debt ..., is under no duty to make restitution therefor, although the discharge was given by mistake of the transferor as to his interests or duties, if the transferee made

no misrepresentation and did not have notice of the transferor's mistake.

*Restatement of Restitution* § 14(1) (1937); *see also id.* § 13 (person who would otherwise be entitled to restitution for payment based on mistake of fact cannot recover from bona fide purchaser having no notice of circumstances).

as between it and the ... hospital, it must bear the loss.

*Lincoln Nat'l Life,* 757 S.W.2d at 415. The court finds this reasoning persuasive. Consequently, the court concludes that plaintiff has no basis for restitution from defendant under state law.[7]

Plaintiff's conversion claim deserves only brief mention. A claim for conversion may be maintained where the defendant exercises dominion or control over property in a manner inconsistent with the plaintiff's rights in the property. *See, e.g., LaBarre v. Gold,* 520 So.2d 1327, 1330 (Miss.1987); *Masonite Corp. v. Williamson,* 404 So.2d 565, 567 (Miss.1981). Where one acquires possession of the property in a lawful manner, as did defendant in the present case, his refusal to relinquish possession or control over the property after a demand by plaintiff gives rise to the action. *See* 18 Am.Jur. *Conversion* § 84 (1985). Plaintiff's conversion claim fails because plaintiff has not established that it had any title or right to the payments at the time it demanded a refund from defendant. The mere fact that the payments were made because of a mistake of fact does not necessarily mean that plaintiff's right to them is superior to defendant's. Indeed, as this court has concluded *supra,* once plaintiff made the payments to defendant, it no longer had any right to them. Thus, defendant's continued possession of the payments cannot be the basis for an action in conversion.

### MMHRC's Counterclaim

In support of its motion for summary judgment on defendant's counterclaim,

---

**7.** Plaintiff insists that it should recover because allowing MMHRC to retain the payments would "work as an estoppel against the plan." This argument refers to the provision in ERISA that the right to benefits is to be governed by a written instrument. 29 U.S.C. § 1102(a)(1). Based on this "written instrument" requirement, the Fifth Circuit has refused to allow parties claiming to be beneficiaries to recover benefits that are not provided by the express terms of the written plan document, even when those seeking recovery have relied to their detriment on the promises and assurances of employers, union officials or plan trustees that they are entitled to benefits. *See, e.g., Cefalu v. B.F. Goodrich Co.,* 871 F.2d 1290 (5th Cir.1989); *Degan v. Ford Motor Co.,* 869 F.2d 889 (5th Cir. 1989); *accord, Nachwalter v. Christie,* 805 F.2d 956 (11th Cir.1986); *Cummings by Techmeier v. Briggs & Stratton Retirement Plan,* 797 F.2d 383 (7th Cir.), *cert. denied,* 479 U.S. 1008, 107 S.Ct. 648, 93 L.Ed.2d 703 (1986). Counsel for plaintiff attempts to garner support for its position from *Memorial Hospital System v. Northbrook Life Insurance Co.,* 904 F.2d 236 (5th Cir.1990), stating that the case "reaffirms the ERISA law that there can be no estoppel against an ERISA plan." In *Memorial Hospital* the court did mention prior holdings that ERISA preempts state law claims "that have the effect of orally modifying the express terms of an ERISA plan and increasing plan benefits for participants or beneficiaries...." *Id.* at 245. It went on to point out, however, that the rule disallowing oral modifications would not apply to a cause of action for recovery by a hospital from an insurance company based on a theory of negligent misrepresentation, where the patient was not covered under the plan, because such recovery "in no way expands the rights of the patient to receive benefits under the terms of the health care plan." *Id.* at 246. "If the patient is not covered under the plan, he or she is individually obligated to pay for the medical services received. The only question is whether the risk of non-payment should remain with the provider or be shifted to the insurance company...." *Id.* Similarly, allowing MMHRC to retain the payments from NBAT would not expand Derron Johnson's rights to receive benefits. He will remain obligated to pay; the only question is which party should bear the risk that he will not do so.

Counsel for plaintiff also states that in *Memorial Hospital* "the Fifth Circuit clearly held that the hospital's claims against the plan based upon the assignment of benefits from the employee were barred by ERISA." Counsel is referring to the fact that the Fifth Circuit recognized that the hospital's state law claims which were derivative of any rights of the patient were necessarily claims for benefits and were therefore preempted. It concluded, on the other hand, that the hospital's claim for negligent misrepresentation, was not derivative, i.e., not based on the hospital's status as assignee of benefits, and therefore was not preempted by ERISA, partly because the hospital, when considered as other than an assignee of benefits, was not a "principal ERISA entity." Plaintiff's argument fails precisely because its claim for restitution, and defendant's right to retain the payments, are not "based on the assignment of benefits." Under the state law of money had and received, by which plaintiff seeks to recover, MMHRC is a proper defendant not because it "stands in the shoes" of Derron Johnson but simply because it holds money to which plaintiff claims a right, and this court's refusal to allow recovery is based not on MMHRC's status as an assignee of benefits but on its status as a third-party creditor.

plaintiff argues that this claim is preempted by ERISA, and, moreover, that any recovery would violate the policies of the Act. However, *Memorial Hospital* compels the conclusion that this claim is not preempted and, further, indicates that recovery would not be inconsistent with any ERISA policy or any interest Congress intended to protect thereby. *See supra* note 7. Accordingly, summary judgment on the counterclaim will be denied.

*Conclusion*

Plaintiff's motion for summary judgment is hereby denied. Defendant's motion is granted, and accordingly, counts I and III of the complaint will be dismissed with prejudice. Additionally, the court, having concluded that defendant is entitled to judgment as a matter of law on count II, the claim for money had and received, hereby grants summary judgment in favor of defendant on that claim and will dismiss it with prejudice.[8]

SO ORDERED.

---

**8.** On a motion for summary judgment, a court may grant summary judgment for the non-movant *sua sponte. In re Caravan Refrigerated Cargo, Inc. v. Yaquinto,* 864 F.2d 388, 393 (5th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 3254, 111 L.Ed.2d 763 (1990). It follows that a court may, in an appropriate case, grant judgment on a claim that is not the subject of the motion.