# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1999-CA-01753-SCT

*GREENLINE EQUIPMENT COMPANY, INC. AND PERMA SEPTIC TANK COMPANY, INC.*

v.

*COVINGTON COUNTY BANK, A MISSISSIPPI BANKING CORPORATION, JACK H. HAYES, JR. AND GLEN EAVENSON d/b/a COVINGTON STEEL COMPANY*

| | |
|---|---|
| DATE OF JUDGMENT: | 9/23/1999 |
| TRIAL JUDGE: | HON. ROBERT G. EVANS |
| COURT FROM WHICH APPEALED: | COVINGTON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | BRETT WOODS ROBINSON |
| | NORMAN GENE HORTMAN, JR. |
| | S. ROBERT HAMMOND, JR. |
| ATTORNEYS FOR APPELLEES: | DAVID SHOEMAKE |
| | FORREST W. STRINGFELLOW |
| | GREGORY MOREAU JOHNSTON |
| | GEORGE THOMAS SULLIVAN |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART - 05/30/2002 |
| MOTION FOR REHEARING FILED: | 6/12/2002 |
| MANDATE ISSUED: | |

**BEFORE McRAE, P.J., DIAZ AND CARLSON, JJ.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1. We have before us today a case which the trial court characterized as containing "the second-most convoluted set of facts ever known to Mississippi jurisprudence." Notwithstanding being confronted with a difficult case, the trial judge, in his original Findings of Fact and Conclusions of Law, stated that "[w]hile tempted to simply cut this Gordian knot with the judicial sword and make everything go away, this [trial court] has attempted to untie the same." Although the trial court meticulously considered the record before it and eventually entered the original and then amended findings of fact and conclusions of law, and the original and then amended final judgment in this case, this Court is constrained, as a matter of law, to hold that the trial court did commit error in at least one instance. This finding is made by the Court, acknowledging that it has the advantage of cool and calm reflection based admittedly on a cold record, and affording great deference to the learned trial judge who was "there on the scene", who "smelled the smoke of battle", and who "sensed the interpersonal dynamics between the lawyers and the witnesses and himself." *See **Culbreath v. Johnson***, 427 So.2d 705, 708 (Miss. 1983).

## STATEMENT OF THE CASE

¶2. This appeal is taken from a final judgment entered in the Circuit Court of Covington County, Mississippi, one of several trial courts which dealt with the parties on the subject matter of this litigation. The life of this protracted civil action commenced on May 26, 1989, when Covington County Bank (Bank) filed its complaint against Glen Eavenson (Eavenson), doing business as Covington Steel Company (Covington Steel), Greenline Equipment Company, Inc. (Greenline), Perma Septic Tank Company, Inc. (Perma Septic), Louis W. Harper, Sr., and Western Surety Company. Sheriff Harper and his bonding company, Western Surety Company, were later dismissed as parties. The focus of this case is a Model 690B John Deere excavator (backhoe), in which the Bank claimed a security interest as a result of Eavenson's execution of a promissory note and related UCC-1 financial statements. In its suit, the Bank in essence claimed that certain parties had wrongly converted the excavator to the Bank's detriment and caused the Bank to suffer monetary damages in excess of $60,000. From May 26, 1989, until May 5, 1993 (a period of almost four years), the various parties filed pleadings, which included answers and amended answers, answers and defenses, cross-claims, motions and revised motions, and third-party complaints. Along the way, in addition to the Bank's claims, the following claims also surfaced: Eavenson's cross-complaint against Greenline and Perma Septic; Perma Septic's counterclaim against the Bank and Greenline; and, Greenline's third-party complaint against its lawyer.

¶3. After a five-day non-jury trial between December 1, 1993, and February 2, 1994, the trial court took this case under advisement for subsequent ruling. In the end, the circuit court ruled, inter alia, that both Greenline and Perma Septic had wrongfully converted the subject excavator to the detriment of the Bank, thereby causing both Greenline and Perma Septic to be jointly and severally liable to the Bank for monetary damages in the amount of $35,070.72; that Perma Septic was not entitled to indemnification on its counterclaim against Greenline, nor entitled to relief on its counter- claim against the Bank; that Eavenson could not maintain his claims against Greenline and Perma Septic; and, that the applicable statute of limitations had run, thereby causing Greenline to take nothing on its third-party complaint against its lawyer for legal malpractice. The trial court's findings of fact and conclusions of law were filed on September 8, 1998, and its final corrected findings of fact and conclusions of law were filed on November 24, 1998. The trial court's final judgment was filed on September 10, 1999, and its amended final judgment was filed on

September 28, 1999. The Order Denying Motion to Set Aside Final Judgment was filed on October 15, 1999. Based on these actions of the trial court, Greenline and Perma Septic have appealed to this Court for relief. Eavenson (Covington Steel) has also raised issues on this appeal, claiming that the trial court improperly dismissed his claims against Greenline and Perma Septic.

## FACTS

¶4. On January 2, 1985, Glen Eavenson, doing business as Covington Steel Company, borrowed $30,037.50 from the Covington County Bank. Eavenson used a Model 690B John Deere excavator (backhoe) as collateral for this loan. The pertinent documents reveal that this loan was actually a renewal of a previous loan made in 1984, and was not for the purchase of the excavator. Eavenson signed a promissory note, security agreement, disclosure statement, and a UCC-1 statement in favor of the Bank. The Bank, in turn, filed the UCC-1 in the office of the Chancery Clerk of Covington County, Mississippi on January 11, 1985. The note on the loan became due and payable on January 2, 1986.

¶5. On June 18, 1985, Eavenson bought a used engine from Greenline, and Eavenson's employees installed the engine in the excavator. While working in Lowndes County, Eavenson and a couple of his employees noticed a "fuel knock" and, therefore, on October 21, 1985, Eavenson sent the excavator to the Greenline shop in Columbus for repairs. Disputes arose as to whether or not certain repair work had been authorized. Greenline billed Covington Steel (Eavenson) $8,784.33 for the total cost of the repairs; however, Covington Steel failed to remit any payment on this bill.

¶6. On January 20, 1986, Greenline's attorney, Jack H. Hayes, Jr. (Hayes), sent a letter to Covington Steel stating that because it had failed to pay for the repairs, Greenline had a mechanic's lien on the excavator and would commence legal action to foreclose on the lien if payment still was not forthcoming. Eventually Hayes, in representing Greenline, filed a mechanic's lien suit in Covington County Circuit Court on March 12, 1986, but later dismissed that suit. Another mechanic's lien suit was filed by Hayes, on behalf of Greenline, in the Circuit Court of Lowndes County on March 28, 1986. In this suit, Greenline requested that a monetary judgment be awarded against Covington Steel (Eavenson) for the amount of the mechanic's bill ($8,802.77), as well as attorney's fees and costs, and that the excavator, which was still in the possession of Greenline, be sold by order of the court to generate the money to satisfy the judgment. In its complaint, Greenline alleged that the defendant, Covington Steel, was a Mississippi corporation which could be served with process through its agent, Eavenson. As it turned out, Covington Steel was not a Mississippi corporation and the properly named defendant should have been Eavenson, doing business as Covington Steel.

¶7. On May 6, 1986, Hayes filed a request for entry of default against Covington Steel and received a clerk's default. On May 13, 1986, the Circuit Court of Lowndes County entered a default judgment in favor of Greenline and against Covington Steel in the amount of $8,802.77 and all costs, and further ordered, based on the mechanic's lien, that the Sheriff of Lowndes County sell the excavator at public auction to satisfy Greenline's monetary judgment against Covington Steel. The sheriff conducted a public auction on May 30, 1986, and Perma Septic purchased the excavator for $9,500.00. On June 21, 1986, Hayes mailed Eavenson a check in the amount of $352.72, representing the excess over and above the amount of the mechanic's lien and related costs.

¶8. Two days later, on June 23, 1986, Eavenson notified Covington County Bank of the Sheriff's sale of the excavator. On July 9, 1986, the Bank notified Hayes of its perfected security interest in the excavator, and

then in August, 1986, the Bank likewise informed Perma Septic of its lien on the excavator. On September 17, 1986, Eavenson (Covington Steel) filed a motion to set aside Greenline's default judgment, alleging as grounds, lack of process or notice and insufficiency of process. On December 11, 1986, the Bank filed a replevin action against Perma Septic in the Lowndes County Circuit Court; however, Perma Septic was not served with process in the replevin action until December 18, 1986, two (2) days after Perma Septic had sold the excavator to C & C Equipment Company (C & C) for the sum of $25,000.

¶9. On January 5, 1987, C & C sold the excavator to the City of McComb for the sum of $34,000. On March 31, 1987, a hearing was held in Lowndes County Circuit Court on Covington Steel's motion to set aside Greenline's default judgment, and at the conclusion of the hearing, that court ruled that Greenline's default judgment (which had led to the Sheriff's sale of the excavator) should be set aside. This ruling by the Lowndes County Circuit Court was evidenced by its order dated April 3, 1987. On April 10, 1987, the Covington County Bank filed a replevin action against the City of McComb in the Circuit Court of Pike County. In August of 1987, Eavenson filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Southern District of Mississippi. In the bankruptcy documents filed in court, Eavenson listed Greenline's claim as a disputed claim and the Bank's claim as a secured claim. An agreed judgment was entered in the bankruptcy proceeding on January 15, 1988, and this judgment lifted the stay on the excavator and allowed the Bank to recover the excavator. On May 23, 1988, the Lowndes County Circuit Court dismissed the mechanic's lien suit on the clerk's motion, for want of prosecution. On September 9, 1988, the Bankruptcy Court discharged Eavenson from his debt to the Bank. On May 26, 1989, in the Circuit Court of Covington County, the Bank instituted the suit which is the basis of this appeal. On July 21, 1989, the Pike County Circuit Court ordered the return of the excavator to the Bank in the replevin action. Finally, on October 24, 1989, the Bank sold the subject excavator at a public sale to Freddy Rogers Construction for the sum of $14,500.

## DISCUSSION

¶10. Due to the number of parties, as well as the number of issues presented in this appeal, the issues have been arranged categorically by the parties raising them.

## I. GREENLINE EQUIPMENT COMPANY, INC.

### A. WHETHER THE CIRCUIT COURT OF COVINGTON COUNTY ERRED WHEN IT HELD THAT GREENLINE IS LIABLE FOR CONVERSION.

¶11. Greenline argues that the circuit court erred when it found that Greenline converted the property of Covington County Bank when it sold the excavator in the execution sale. Specifically, Greenline asserts that (1) any knowledge it possessed of the Bank's lien did not satisfy the statutory requirements of Miss. Code Ann. § 75-9-401, and (2) that Greenline could not have converted the Bank's property because at the time the excavator was sold at the sheriff's sale, the excavator still belonged to Glenn Eavenson d/b/a Covington Steel Company. We agree.

¶12. A "conversion requires an intent to exercise dominion or control over goods which is inconsistent with the true owner's rights." *Walker v. Brown*, 501 So.2d 358, 361 (Miss. 1987). The trial judge relied heavily on this Court's decision in *Miss. Motor Fin., Inc. v. Thomas*, 246 Miss. 14, 149 So.2d 20 (1963). In that case, the appellee filed an action to enforce a mechanic's lien on an automobile he had repaired. The justice of the peace entered an order for an execution sale, and thereafter the appellee

purchased the car at the execution sale. Thus, unlike the case presently before us, the mechanic never relinquished control of the automobile he repaired. Mississippi Motor Finance, Inc., in turn, filed an action for conversion alleging that the sale was void because appellee failed to name it as a party. The chancery court ordered that the automobile be resold with the mechanic's lien to have priority over the finance company in the distribution of the proceeds, and the finance company appealed to this Court.

¶13. This Court agreed that the finance company was a necessary party, and consequently, that its rights were not affected by a proceeding to which it had not been made a party. *Id.* at 23. However, we also said that "this does *not* mean that the appellee, who purchased the automobile at the sale made under the judgment of the justice of the peace court, became liable in an action for conversion for the unpaid balance of the purchase price of the automobile evidenced by the appellant's conditional sales contract". *Id.* (emphasis added)**.** In ***Thomas*** we went on to state:

> There is no conversion until the title of the lawful owner is made known and resisted or the purchaser exercises dominion over the property by use, sale, or otherwise.

> ***

> . . .To make out a conversion, there must be proof of a wrongful possession, or the exercise of a dominion in exclusion or defiance of the owner's right, or of an unauthorized and injurious use, or of a wrongful detention after demand. (Internal citations omitted.) Action of tort. . .cannot be maintained without proof that the defendant either did some positive wrongful act with the intention to appropriate the property to himself, or to deprive the rightful owner of it, or destroyed the property. In ***Lee Tung v. Burkhart***, 59 Or. 194, 195, 116 P. 1066, the Court held that in order to maintain an action for conversion, there must have been, on the part of the defendant, some unlawful assumption of dominion over the personal property involved, in defiance or exclusion of the plaintiff's rights, or else a withholding of the possession under a claim of right or title inconsistent with that of plaintiff.

149 So.2d at 23. We also noted that "there is no evidence in the record of any lack of good faith on the part of the appellee in the prosecution of his claim in the justice of the peace court for the enforcement of his lien, or in his belief, though mistaken, that he owned the property as the result of his purchase of the automobile at the execution sale." *Id.* at 24.

¶14. Turning to the case, sub judice, both Greenline and the Bank agree that Greenline was notified on July 9, 1986, of the Bank's claimed lien. The default judgment was taken on May 13, 1986. The excavator was sold on May 30, 1986. Thus, according to both Greenline's and the Bank's time lines, Greenline was notified of the lien *after* the sale and *after* possession of the excavator had passed from Greenline to Perma Septic. Therefore, the Bank concludes that Greenline not only converted the excavator when it sold it at the execution sale, but that Greenline "further compounded that conversion by failing to restore possession of the property after having been notified of the lien." The Bank cites several cases to support this claim. However, in each of these cases the defendants were made aware of another's claim to the subject property while the defendants were in control or in possession of such property. Conversely, at the time Greenline received the notice of the Bank's lien the excavator was already in the possession of Perma Septic. Additionally, at the time of the sheriff's sale, the excavator was still the property of Glen Eavenson d/b/a Covington Steel Co., and not the property of the Bank, which at that point, could only claim a security interest or right to ownership, as opposed to actual ownership or title. Accordingly, the Court is constrained, as a matter of law, to find that it was error for the trial judge to hold Greenline liable for

conversion.

## B. WHETHER THE CIRCUIT COURT ERRED IN AWARDING DAMAGES TO COVINGTON COUNTY BANK.

¶15. As discussed in the immediately preceding section, the trial court erred in holding Greenline liable for conversion; therefore, the award of damages against Greenline and in favor of the Bank on its conversion claim must also be reversed.

## C. WHETHER THE CIRCUIT COURT OF COVINGTON COUNTY ERRED WHEN IT HELD THAT THE STATUTE OF LIMITATIONS HAD EXPIRED ON GREENLINE EQUIPMENT COMPANY, INC.'S LEGAL MALPRACTICE CLAIM AGAINST ITS ATTORNEY.

### 1.

¶16. The application of a statute of limitations is a question of law to which a de novo standard applies. *Sarris v. Smith*, 782 So. 2d 721, 723 (Miss. 2001) (citing *ABC Mfg. Corp. v. Doyle*, 749 So.2d 43, 45 (Miss. 1999).

### 2.

¶17. "[T]he statute of limitations in a legal malpractice action properly begins to run on the date the client learns or through the exercise of reasonable diligence should learn of the negligence of his lawyer." *Smith v. Sneed*, 638 So.2d 1252, 1253 (Miss. 1994). We firmly believe that inasmuch as the Court has reversed the judgment against Greenline, there is no need to discuss the statute of limitations issue on Greenline's legal malpractice claim against its attorney, since the conversion claim against Greenline is what prompted Greenline to file its legal malpractice claim against its attorney by way of a third-party complaint. But suffice it to state that based on the record before the trial court, that court's findings that the statute of limitations commenced running at least by December 16, 1986, and that Greenline's malpractice claim against its attorney was barred by the then-applicable six-year statute of limitations are amply supported by the record. Accordingly, the trial court's finding in that regard is affirmed.

## D. WHETHER THE CIRCUIT COURT OF COVINGTON COUNTY ERRED WHEN IT HELD THAT THE STATUTE OF LIMITATIONS HAD EXPIRED ON GREENLINE EQUIPMENT COMPANY, INC.'S INDEMNITY CLAIM AGAINST ITS ATTORNEY.

¶18. Greenline next asserts that the trial judge erred in finding that its claim for indemnity against its attorney was barred by the statute of limitations. Again, based on our previous finding on the conversion claim against Greenline, we find this issue to be without merit. Upon a review of the record, which includes the original and amended findings of fact and conclusions of law, and the original and amended final judgments, we find that because Greenline's third-party complaint was based entirely on the alleged legal malpractice of its attorney, it was not necessary for the trial court to specifically address the indemnity issue raised by Greenline. Any right for monetary recovery that Greenline possessed arose out of its attorney's liability for alleged malpractice. The final amended order of the trial court clearly dismissed the third-party complaint with prejudice. Because we are reversing and rendering the judgment of the trial court, there is no loss by Greenline, and thus, nothing for which to be indemnified.

## II. PERMA SEPTIC TANK COMPANY, INC.

### A. WHETHER PERMA SEPTIC WAS GUILTY OF CONVERSION BECAUSE ITS POSSESSION OF THE SUBJECT PROPERTY AT ALL TIMES WAS PURSUANT TO AN ORDER OF THE CIRCUIT COURT OF LOWNDES COUNTY, MISSISSIPPI.

¶19. Pursuant to M.R.A.P. 28(i), Perma Septic, in its brief, adopted certain portions of Greenline's brief.

¶20. Perma Septic argues that the circuit court erred by holding it liable for conversion. Specifically, Perma Septic argues that it was an innocent purchaser, and in so doing, Perma Septic draws our attention to the following passages from 30 Am. Jur. 2D, *Executions and Enforcement of Judgments*:

§ 586 - Generally.

The purchaser at an execution sale is generally entitled to be returned to status quo, so far as possible, where an execution sale is set aside because of an irregularity in or invalidity of the proceedings....

\*\*\*

§ 588 - Obligation of execution debtor.

To the extent that the execution purchaser is entitled to reimbursement, the purchaser is generally held entitled to be subrogated to the execution creditor's rights....

\*\*\*

§ 590 - Extent of reimbursement.

When an execution sale is null and void, resulting in the execution purchaser of the realty obtaining no title to the property, the execution purchaser is entitled in an amount equal to all sums advanced to the sheriff as a result of the null and void sale....

\*\*\*

§ 489 - Expenditures by purchaser.

The right of an execution purchaser, under proper circumstances, to restitution or reimbursement, is generally held to extend not only to payments of the purchase price, but also to expenditures for the discharge of an encumbrance against the property, such as the lien of a prior judgment or execution, as well as for taxes and assessments....

Accordingly, Perma Septic asserts that it is entitled to be placed in status quo. Perma Septic claims that it is entitled to $15,276.76 from Greenline which represents the purchase price and expenses. Perma Septic further asserts that the Bank is indebted to it in the amount of Perma Septic's purchase price and the improvements to the property.

### 1.

¶21. We first address whether Perma Septic was liable to the Bank for conversion of the excavator. Perma Septic argues that it is shielded from liability because the circuit court only set aside the default judgment and

never set aside the sheriff's sale. It argues that it had the right to treat the property as its own until it was tendered its purchase price and reasonable repairs. Essentially, Perma Septic asserts that it was a bona fide purchaser at the sheriff's sale, believed it acquired a valid title at the sale, and had no knowledge of an alleged infirmity of the title until after the purchase price was paid and its improvements had already been made to the excavator. Further, Perma Septic claims that it had no actual knowledge of an infirmity of the title until the order setting aside the default judgment was made. At the time that order was entered, Perma Septic no longer had possession of the excavator.

¶22. Whether Perma Septic was a bona fide purchaser at the sheriff's sale is not relevant to this issue.

> A claim for conversion may be maintained where the defendant exercises dominion or control over property in a manner inconsistent with the Plaintiffs rights in the property. See. *LaBarr v. Gold*, 520 So.2d 1327, 1330 (Miss. 1987); *Masonite Corp. v. Williamson*, 404 So.2d 565, 567 (Miss. 1981). *Where one acquires possession of the property in a lawful manner, as did defendant in the present case, his refusal to relinquish possession or control over the property after a demand by Plaintiff gives rise to the action*.

*Nat'l Benefit Adm'rs, Inc. v. Miss. Methodist Hosp. & Rehab. Ctr., Inc.*, 748 F. Supp. 459, 466 (S.D. Miss. 1990) (emphasis added). As the Bank further notes, the Fifth Circuit Court of Appeals has recognized a similar rule:

> . . . Although the mere purchase of personal property in good faith from a person who has no right to sell it is not a conversion, *a conversion nevertheless occurs when the title of the lawful owner is made known and resisted or the purchaser exercises dominion over the property by use, sale, or possession*.

*Textile Supplies, Inc. v. Garrett*, 687 F.2d 123, 128 (5th Cir. 1982) (emphasis added).

¶23. The Bank correctly states that David Ashmore of Perma Septic testified that he knew of the Bank's lien in August of 1986 while the excavator was in Perma Septic's possession. Perma Septic's attorney was furnished with a copy of the motion to set aside the default judgment filed by Eavenson by a letter dated September 18, 1986 from Hayes, Greenline's attorney. The Bank, through its attorney in Columbus, filed a complaint in replevin against Perma Septic on December 11, 1986, while the excavator was still in the possession of Perma Septic. The testimony offered establishes that Perma Septic had knowledge of the claims of both Eavenson and the Bank during the time that Perma Septic had possession of the excavator.

¶24. The Bank additionally notes that Perma Septic's Ray Gore testified that he intentionally refused to restore possession of the excavator to Eavenson, the Bank, or the court. Perma Septic's David Ashmore testified that when he negotiated the sale of the excavator to C & C, he advised C & C and even placed a notation on the bill of sale that in the event possession of the excavator was later ordered to be either in the Bank or Eavenson, Perma Septic would stand behind the title. Accordingly, Perma Septic's assignment of error is without merit.

## 2.

¶25. We next address whether Perma Septic is entitled to indemnity from Greenline and hold that, on the facts of this particular case, it is not.

¶26. Greenline argues, and we agree, that "[u]nder the common law, a wrongdoer is not entitled to compel contribution from a joint tortfeasor. This is in accord with the doctrine that if tortfeasors are in pari delicto, no indemnity is due to one held separately liable." *Sneed v. Ford Motor Co.*, 735 So.2d 306, 308 (Miss. 1999). As discussed, Perma Septic is liable for conversion, and consistent with our holding in *Sneed*, Perma Septic is separately liable, and therefore, not entitled to indemnity from Greenline. Accordingly, this assignment of error is without merit.

### 3.

¶27. We next address Perma Septic's argument that it is entitled to a judgment or offset against the Bank for its purchase price and repairs. Perma Septic asserts that it is undisputed that it invested a purchase price of $9,500.00 and repairs of $5,776.76, for a total of $15,276.76. Perma Septic further states that through advertising and sale efforts, it was able to conclude a sale of the backhoe to C & C for the sum of $25,000.00, thereby obtaining a profit of $9,723.24. However, as a result of the Bank's replevin, Perma Septic chose to repay C & C its purchase price of $25,000.00.

¶28. While Perma Septic did offer, via David Ashmore, a list of the repairs it asserts it made, there is nothing to indicate Perma Septic established that these repairs were reasonable and necessary. Further, Perma Septic has presented a lengthy and detailed argument as to why it should not be held liable to the Bank, yet it presents no citation to any legal authority as to why the Bank should be held liable to it by way of damages or an offset.

### 4.

¶29. Since we have found that Perma Septic is liable for conversion of the excavator, it naturally follows that Perma Septic is liable to the Bank for damages. Perma Septic has provided us with no basis for its claim of an offset, nor did Perma Septic establish that the repairs were reasonable and necessary. When considering the entire record in this case, and the applicable case law, this Court concludes that the trial court's award of damages against Perma Septic in the amount of $35,070.72 for conversion of the excavator was proper and is beyond the authority of this Court to disturb.

### III. GLEN EAVENSON

**A. WHETHER THE CIRCUIT COURT ERRED IN HOLDING THAT GLEN EAVENSON'S DEBT TO THE BANK WAS DISCHARGED BY THE BANKRUPTCY PROCEEDING, THEREBY CAUSING EAVENSON TO BE DISMISSED AS A DEFENDANT IN THIS CASE.**

¶30. Eavenson had filed an answer and cross-complaint against Greenline and Perma Septic in the case, sub judice. The trial court ruled that absent evidence of Eavenson's reaffirmation of his debt to the Bank, Eavenson should be dismissed as a party, with the dismissal including any cross-claims asserted by Eavenson. It is Eavenson's position that the pleading of a discharge in bankruptcy is an affirmative defense and a personal defense. He concludes that he did not raise this affirmative defense, and further admitted that he owed the Bank, and consequently, the circuit judge erred in dismissing him from this case. We disagree.

¶31. Eavenson filed for bankruptcy *after* the conversion; therefore, Eavenson's cause of action became property of the bankruptcy estate. Accordingly, the bankruptcy trustee, and not Eavenson, was the only party who could pursue the claims. Notwithstanding Eavenson's assertions to the contrary, there is simply

no evidence presented of a reaffirmation of the debt. Additionally, under bankruptcy law, when a petition for bankruptcy is filed, that petition creates an estate. 11 U.S.C. § 541. Under § 541, all property of the debtor becomes a part of the estate, including causes of action belonging to the debtor at the time the case is commenced. 11 U.S.C. § 541.10; *Billingham v. Wynn & Wynn, P.C., (In re Rothwell)*, 159 B.R. 374, 377 (Bankr. D. Mass. 1993); *see 4 Collier on Bankruptcy*, at 74-3, 74-4 (2002). Eavenson had no standing to pursue this action on his own behalf. Consequently, this assignment of error is without merit.

> **B. WHETHER THE CIRCUIT COURT ERRED IN HOLDING THAT GLEN EAVENSON CANNOT MAINTAIN A SUIT AGAINST GREENLINE AND PERMA SEPTIC BECAUSE HE WAS REQUIRED TO FILE A COMPULSORY COUNTERCLAIM PURSUANT TO MISS. R. CIV. P. 13(A) AT THE TIME HE FILED HIS MOTION TO SET ASIDE THE DEFAULT JUDGMENT.**

¶32. Because of the ruling in Section III.A., above, the Court determines that there is no reason to address this assignment of error.

## CONCLUSION

¶33. Greenline is not liable to the Bank for conversion of the excavator; therefore, the trial court's judgment for conversion and award of damages against Greenline and in favor of the Bank is reversed and rendered. Greenline's legal malpractice claim against its former lawyer was barred by the then-applicable statute of limitations; therefore, the trial court is affirmed on this issue. Greenline's indemnity claim is without merit. The trial court's judgment for conversion and award of damages against Perma Septic and in favor of the Bank is affirmed. Perma Septic is not entitled to indemnity against Greenline nor entitled to a judgment or offset against the Bank. The trial court did not err in dismissing Eavenson as a defendant and disallowing Eavenson's claims against Greenline and Perma Septic.

¶34. **AFFIRMED IN PART; REVERSED AND RENDERED IN PART.**

> **PITTMAN, C.J., McRAE AND SMITH, P.JJ., COBB, DIAZ AND GRAVES, JJ., CONCUR. EASLEY, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION. WALLER, J., NOT PARTICIPATING.**

> **EASLEY, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶35. I concur solely with the majority's determination that Greenline's malpractice claim against its attorney, Jack H. Hayes, Jr., is barred by the applicable statute of limitations. The trial court found that the then applicable six-year statute of limitations commenced running by December 16, 1986, the date Perma Septic sold the excavator in question. Therefore, I concur in the affirmance of the trial court's finding that the applicable statute of limitations had run, thereby causing Greenline's third-party complaint against its lawyer for legal malpractice to fail.

¶36. I respectfully dissent as to all other issues addressed by the majority opinion.